COLORADO IRON-WORKS v. SIERRA GRANDE MINING Co.

1. FOREIGN CORPORATIONS DOING BUSINESS IN THIS STATE.— A single purchase of machinery within the state by a foreign mining corporation, to be transported to and set up in the state of its domicile, is not within the inhibition of the General Statutes of Colorado, section 260, which prohibits foreign corporations from doing business within the state until they have filed with the secretary of state a certificate designating their principal place of business within the state, and appointing an agent upon whom process may be served.

2. A SINGLE TRANSACTION MAY SUBJECT SUCH CORPORATION TO THE JURISDICTION OF THE STATE COURTS.— But the purchase of the machinery by the foreign corporation is a sufficient doing of business in the state to render it amenable to the jurisdiction of the courts of the state, so far as the enforcement of the purchase price is concerned, if jurisdiction can be obtained as provided by the laws of the state.

3. SERVICE OF PROCESS UPON A STOCKHOLDER.— One who gratuitously transfers his stock in a foreign corporation to trustees, whose names he does not know, for some unknown and undefined purpose, and at the same time contributes $50 to cover the expense of the transfer, is still a stockholder in such foreign corporation, within the meaning of Code Civil Procedure of Colorado, section 40, which authorizes the service of process on a foreign corporation by a delivery of the writ to a stockholder, when it has no agent or officer within the state.

## Appeal from District Court of Arapahoe County.

THE appellant, plaintiff below, is a domestic corporation doing business in the city of Denver; the appellee is a foreign corporation organized under the laws of, and engaged in mining in, the territory of New Mexico. In August, 1885, the two corporations entered into a written contract by which appellant was to manufacture, furnish and erect at the mines of appellee in New Mexico, certain machinery and appliances for the reduction of ores, for $39,260. The contract was made by the general manager or agent of appellee in its behalf, and was to become operative upon its receiving the signature of the president. Payments were to be made,— $10,000 upon the signing of the contract by the president; $15,000 upon the shipment by appellant of the heavy machinery; $5,000 when the work was completed, and the balance when the work was accepted by a committee, within thirty days after its completion.

As far as is shown by the record, the contract was fully performed by appellant and the work accepted by appellee. It is alleged in the complaint that appellant furnished extra supplies and labor, to the amount of $3,340. It is admitted that certain payments were made, and alleges the balance remaining unpaid to have been $11,987.97. It is also alleged that a settlement was had at the city of Denver on the 25th

of February, 1886; that the balance found due and agreed upon was as above stated, viz., $11,987.97.

On the 13th of November, 1886, this suit was brought to recover such balance, with interest from the alleged date of settlement. Summons was issued, which was returned with the following indorsement: "State of Colorado, Arapahoe county — ss.: I do hereby certify that I have duly executed the within summons on this 13th day of November, A. D. 1886, by delivering a true copy of the same to Samuel Alsop, a stockholder of the within-named defendant, the Sierra Grande Mining Company, personally, at the city of Denver, in the county of Arapahoe, and state of Colorado. I further certify that said corporation keeps no principal office in any county in the state of Colorado, and there is no county in which the principal business of said corporation is carried on, and that no president, or other head of said corporation, or vice-president, secretary, treasurer, cashier, general agent, general superintendent or agent thereof, could then be found, or was then or can now be found, or is now in the county of Arapahoe, state of Colorado, but each and every officer was then, and is now, absent from said county; and I further certify that, at the same time and place, I delivered to said Alsop a copy of the complaint herein. Frederick Cramer, Sheriff. By J. M. Chivington, Under Sheriff."

On the 22d of November the following motion was filed by counsel of appellee: "Now comes the defendant, the Sierra Grande Mining Company, by its attorney, R. H. Gilmore, and appears specially for this purpose, and no other, and moves the court that the summons herein be quashed, on the ground that it appears upon the return thereon, and on the face of the complaint served therewith, that defendant is a foreign corporation, not doing business within the state of Colorado, and that the said summons was not served upon the proper person, as prescribed by law."

On the 9th of December, appellee, by its counsel, presented the following paper: "Making special appearance,

and moves the court that the summons and the return thereon be quashed, and that defendant be not compelled to answer the complaint, on the ground that this court has no jurisdiction of person of defendant; states that defendant is a foreign corporation, organized and incorporated under the laws of New Mexico, and not elsewhere; that no summons has been served on it in this state, or elsewhere; that, at the time of pretended commencement of this action, or at any time previous thereto, or since, it was not and is not doing business in this state, and that it has no principal or other office in any county in this state, nor had it at the time of commencement of this action, nor at such times had it any principal or other place of business or of doing business in this state; nor had it at the time of pretended commencement of this action, or before or since, residing in this state, or having any office or place of business in this state, any president, secretary, treasurer, cashier, general agent, general superintendent or agent, or any other representative, stockholder or other person, who in any manner represented it, or who was by it authorized to receive service of summons or other processes in this state; and further that said Samuel Alsop, Jr., did not at the time of the service of the summons in this action, nor did he at any time before or since, represent the defendant in any capacity whatever, official or otherwise, in the state of Colorado, or elsewhere; nor was he at such time or times in this state in any official character or capacity as an agent, officer or representative of defendant; nor was he doing at such time or times any business for said company in this state, or elsewhere; nor was he authorized to do any business for the defendant, or to represent it as an officer or agent, or to receive service of summons or other process. And further, said Aslop was not at the time of said service, a stockholder, officer, agent, or representative of defendant. The Sierra Grande Mining Company of New Mexico. By R. H. Gilmore, Its Attorney. Verified by R. H. Gilmore, as attorney."

On January 4, 1887, a hearing was had upon the motion

of appellee of November 22d, when the following proceedings were had, and order entered:

"The defendant, by its attorney, R. H. Gilmore, Esq., who appears specially only in this action, asks leave to have its motion to quash the summons and return in this case, which was filed on December 9, 1886, to stand in lieu of its former motion for a similar purpose, served upon the plaintiff on the 22d day of November, 1886, and which is now, by direction of the court, upon plaintiff's request filed herein as of said 22d day of November, 1886, and it is accordingly so ordered without prejudice to the plaintiff's right to object to such substitution, or to any advantage which plaintiff may have been given by the service of said former motion."

On the 7th of January, counsel of appellant filed a motion to strike from the files appellee's motion of December 9th, for the following reasons: "That the defendant had already, before that date, served on plaintiff herein a motion to quash the summons, which was by the court ordered filed as of November 22, 1886, and that defendant had already appeared in said action and waives all the matters set forth in said motion, and said motion was not filed in apt time, and moving for judgment as for want of an answer."

On January 27th, counsel of appellee moved the court for leave to withdraw its motion ordered to be filed as of November 22d. On January 31st, an affidavit of Alsop that he was not a stockholder of appellee at the time of the service of the summons, also affidavits of Mellor, president, and Brosius, secretary, of appellee, made in Philadelphia, that Alsop was not a stockholder, were filed. A hearing was had upon the motion of appellant to strike appellee's motion of December 9th from the files, and appellee's motion for leave to withdraw the motion of November 22d. Both motions were denied, and the court ordered "that both the former and the latter motions, attacking the service of the summons herein, and the jurisdiction of the court

over the person of the defendant, be allowed to stand as an answer or a motion in plea in abatement to the jurisdiction of the court over the person of the defendant, and that the plaintiff have leave to reply to said motions of the defendant as it shall be advised in twenty days from this date."

Appellant excepted to the judgment of the court in denying the motion to strike the motion from the files. On February 18, 1887, appellant replied as follows to appellee's answers or motions for pleas in abatement:

"Now comes the plaintiff in the above-entitled action, and makes this, its replication, to the motions of the defendants, heretofore ordered by the court to be taken as a plea in abatement or answer herein, and alleges the issuance of summons and service and return thereof, setting out the returns in full; denies that defendant was not at any time previous to the commencement of this action doing business in this state, but, on the contrary, alleges that said defendant did, prior to the commencement of this action, enter this state and do business therein, and submitted itself to the jurisdiction of the courts of this state, and on the 31st day of August, 1885, in the city of Denver, in the county of Arapahoe, and state of Colorado, enter into the written contract set out in the complaint herein and upon which this action is brought; alleges that nearly all the machinery called for by said contract was to be manufactured by said plaintiff at said city of Denver, as was well known to said defendant when said contract was entered into, and was so manufactured; that all the moneys that were to become due and payable under said contract were to become due and payable at said city of Denver, and the cause of action in said contract arose within the state of Colorado, and that the goods, wares and merchandise, alleged in the second cause of action to have been sold and delivered, were sold by plaintiff to defendant at the city of Denver, state of Colorado, and were to be paid for at said city; and that the second cause of action arose in the city of Denver, and that the accounting alleged in the third cause of action was had

and said cause of action arose in said city; that as to whether or not, at the time of the commencement of this action, or since, the defendant was not or is not now doing business in said state, this defendant has not and cannot obtain sufficient knowledge or information on which to base a belief, except as hereinbefore stated, and alleges that, by reason of the matters and things done and performed in this state, in respect to which this suit is brought, the defendant is estopped from and will not be heard to say that it was not at the time of the commencement of this action doing business in the state of Colorado, and alleges that by reason of said matters and things in respect to which this suit is brought, defendant has submitted itself to the jurisdiction of the courts of this state; and, without in any way or manner waiving any of the rights it has acquired by reason of the sheriff's return aforesaid, but insisting upon the conclusiveness of said return, alleges, on information and belief, that said Alsop was at the time of the service of summons and the complaint herein upon him a stockholder of the defendant company, and that November 13, 1886, a writ of summons was served on defendant, and this court has jurisdiction of the person of defendant; prays for judgment in accordance with prayer of complaint.   Signed by Teller & Orahood, attorneys for plaintiff, and duly verified by H. M. Orahood as attorney."

On July 5, 1887, the cause was heard on appellee's motion to quash the summons or return of service, and the motion sustained, and an appeal taken to this court.

Messrs. TELLER & ORAHOOD, for appellant.

Mr. R. H. GILMORE, for appellee.

REED, C.   The first and most important question to be determined is whether appellee could be subjected to the jurisdiction of the courts of this state.   It is contended that being a foreign corporation, it had not by its acts and dealings in this state submitted itself to the jurisdiction of the

state courts, and that this cause could not be here tried
and determined.   There are two or three axiomatic princi-
ples applicable to corporations, so well understood, and gen-
erally recognized and conceded, that no authorities are
necessary in their support.   They are:

*First,* that a corporation is in law for civil purposes
deemed a person, may sue and be sued, contract and be
contracted with, and do all other acts which a natural per-
son could do, not *ultra vires.*

*Second,* being an artificial person created by, and deriv-
ing all its powers from its charter, it is local in its charac-
ter, cannot migrate, can only, in a state or country foreign
to that of its creation, make such contracts and do such
business as is permitted by the laws of the state, and under
such restrictions as may be imposed by its laws.

We do not think section 260 of the General Statutes of
this state applicable to the case under discussion, nor that
such a construction was intended or contemplated by the
legislature.   Corporations being, as above stated, confined
in their business operations to the state from which they
derive their existence, and being only allowed to exercise
their functions in a foreign jurisdiction by the comity, and
under the laws, of that state, the intention of the section
above referred to was to enable such corporations as mon-
eyed institutions, insurance companies, and that class of
corporations, perhaps not to migrate, but by means of agents
to extend their business and allow such agencies to become
domiciled and transact the business of the corporation under
the parent office and original charter.   True, in a limited
and technical sense, almost any business transaction, no
matter how trivial, made by a corporation, whether in its
own or an adjacent state,— the buying of goods by a do-
mestic mercantile corporation in New York for the purpose
of sale and business here, or any transaction of that kind,—
may be deemed the doing of business in New York.   A
sale and delivery of goods in Wyoming or Nebraska by a
domestic corporation of this state might technically be

termed doing business in those states; but such accidental or incidental transactions were not, in our view, contemplated by nor within the intention of the legislature in the section under consideration.   Nor in this case can the purchase of machinery to be manufactured here, transported to, set up and operated in, New Mexico, nor the selling of ores mined and produced in New Mexico, and shipped here to a market, be regarded as doing business in this state, as contemplated in such section.

Nor do we deem it necessary that the acts of appellee should be construed to be doing business in this state, outside of the transaction in question, to render it in this case amenable to its courts and subject to its laws. The rule is well settled that a corporation of one state may exercise its functions in another to any extent permitted by the other.   No legislative permission is necessary to allow a foreign corporation to contract for and buy machinery or supplies necessary to the transaction of its business, nor is it necessary in order to allow a foreign corporation to sell its wares or manufactures to a citizen of this state.   Any corporation may sell its products to a party doing business, and if in the purchase a debt be contracted, it can proceed to collect it in our courts.   A foreign corporation can, as in this instance, buy of a domestic manufacturing corporation the same as a natural person, and contract a debt for the articles so bought.   In order to invoke the aid of our own courts in the collection of such debt, it is not necessary for a citizen of this state to show that the debtor was doing business generally in this state, but that he is a debtor; that the debt is due and payable here; and the debtor, whether a natural or an artificial person, if brought by process within the jurisdiction, is amenable to our courts.   Persons, including corporations, by contracting debts in a foreign jurisdiction, will be presumed to have assented to the laws in regard to the collection of debt.   It is not, as is supposed in argument, of controlling importance where or when the original contract, out of which the indebtedness

grew, was perfected and became operative, whether at Denver, New Mexico or Philadelphia, where it was executed by the president of the appellee. The contract appears to have been fully executed by appellant, the work accepted, large partial payments made; all that remained was for appellee to pay the balance due,— an uncontradicted debt,— which by the proofs and former course of dealing was due and payable in Denver, and if not made specifically so, became so by operation of law, no other place having been designated. The appellant, a citizen of this state, had a right to invoke the aid of its courts to collect his debt. A proper regard to the administration of justice, the interests of trade and commerce, and to the rights of citizens, requires that the jurisdiction of courts be sustained, and not circumscribed, except by the necessity of law. In cases of this kind for collection of debts, as was well said in *Railroad Co. v. Gallahue*, 12 Grat. 655, which was cited with approval in *Railroad Co. v. Harris*, 12 Wall. 65 : " It would be a startling proposition if in all such cases citizens of Virginia and others should be denied all remedy in her courts for causes of action arising under contracts and acts entered into and done within her territory, and should be turned over to the courts and laws of a sister state to seek redress." If such construction would prevail, it would in many instances work a denial of justice and give the foreign corporation complete immunity from its contracts. That a corporation may be sued in a foreign jurisdiction is a well-settled general principle, without regard to the manner in which jurisdiction may be obtained; which is a different question, and dependent upon statutes in most states.

In *Bennington Iron Co. v. Rutherford*, 18 N. J. Law, 158, it is said : " The existence of a foreign corporation is recognized in other states, and they have the capacity to sue and be sued out of their own states."

In *Moulin v. Insurance Co.* 24 N. J. Law, 244: "If they authorize their officers to transact business for them in another state, they thereby subject themselves to the jurisdic-

tion, and become answerable to the laws, of that state." In the same case, at page 233: "By the comity universally acknowledged in the states of this Union,   *   *   *   corporations may send their officers and agents into other states, transact their business, and make contracts there; and, in some instances, the laws of the states prescribe the mode and the terms upon which they may do so. I am not prepared to say that, if they choose to avail themselves of this privilege, natural justice will be violated by subjecting their officers and agents to the service of process on behalf of the corporation they represent; on the contrary, I think natural justice requires that they shall be subject to the action of the courts of the state whose comity they thus invoke. For the purposes of being sued, they ought in such cases to be regarded as voluntarily placing themselves in the situation of citizens of that state. Any natural person who goes into another state carries along with him all his personal liabilities; and there is quite as much reason that a corporation which chooses to open an office and transact its business, or to authorize contracts to be made, in another state, should be regarded as thereby voluntarily submitting itself to the action of the laws of that state, as well in reference to the mode of commencing suits against it as to the interpretation of the contracts so made."

And in *Milk Co. v. Brandenburgh*, 40 N. J. Law, 112: "Since the case of *Moulin v. Insurance Co.* 24 N. J. Law, 222, and 25 N. J. Law, 57, it must be regarded as the settled law of this court that, if a corporation makes a contract in a state other than that in which it was chartered, it thereby submits itself to the jurisdiction of such foreign sovereignty so far as to be liable to suit therein in regard to that contract, when summoned according to the laws of the state." See, also, *Bank v. Earle*, 13 Pet. 519, and *Day v. Bank*, 13 Vt. 97, where the same general principles are recognized and asserted; and the same may be said of the courts of most of the states, and that in England the same

jurisdiction is asserted over foreign corporations.    See *Newby v. Colt's Fire-arm Co.* L. R. 7 Q. B. 293.

The question whether Alsop, upon whom service was had, was or was not, at the time of such service, a stockholder of appellee, is not one easy of solution.    It is apparent from the record that his relations with the company were such that he very shortly after the service communicated the fact to the counsel of the company; and, on the 22d of November, when the first pleading was filed, it is claimed by appellee, and admitted of record, that counsel did not know he was not a stockholder.    If he had at the time of service of process parted with his stock, and severed his connection with the company, it is not easy to understand why the fact was not stated.    The first intimation of the fact appears in the pleading of December 9th.    The affidavits introduced to establish the premises were unsatisfactory and evasive. They show that there had been a transfer on the books, and that no stock stood in his name.    But the attempt to show why, and for what purpose, it was transferred to trustees, and for what purpose the trust was created, signally failed, and casts great suspicion on the transaction.    The case as made is one where a stockholder holding stock that cost over $500 gratuitously transfers it to trustees, whose names even he does not know, for some unknown and undefined purpose, and at the same time contributes $50 in money. There is a marked discrepancy in one respect between the affidavit of Mellor, president of appellee, and the testimony of Alsop.    Mellor states the stock "was transferred for value."    Alsop testified that there was no consideration, and says: "There was a request in this circular that those who should transfer their stock to the trustees should make a payment of ten cents a share for expenses, and I inclosed my check for ten cents on five hundred shares,— $50."    In order to establish the fact pleaded, the testimony should have fairly and unequivocally shown that he had, in good faith, divested himself entirely of all ownership and inter-

est, and severed all connection with the company. A transfer in name upon the books might be no evidence of a change of ownership. It might be collusive, or made for convenience to allow another as agent to represent it. The burden of showing that he was not a stockholder was upon appellee, and he should have established the fact affirmatively, by clear and conclusive testimony, of a change of ownership. The testimony failed to establish it.

Counsel for appellant regard the question as settled by the trial court that Alsop was a stockholder; counsel for appellee regard it as having been left undetermined. We are, after reading the opinion of the trial court, in doubt as to how the question was determined in that court, but are clearly of the opinion that appellee failed in proof to establish the allegation in his plea or motion, and that Alsop must be regarded as having been a stockholder at the time of the service of process.

Section 40 of the Code of Civil Procedure provides: " If the suit be against a foreign corporation, or a non-resident joint-stock company or association doing business within this state, service shall be made by delivering a copy of the writ to an agent, cashier or secretary thereof; in the absence of such agent, cashier, treasurer or secretary, to any stockholder."

We conclude, therefore, that the contracting of the debt in question was a sufficient doing business within this state to render the corporation amenable to the courts of this state, if jurisdiction could be obtained by service of process as provided in section 40 of the Code. We cannot agree with counsel of appellee that the district courts of this state are courts of limited jurisdiction, and that their jurisdiction over foreign corporations is dependent upon the voluntary acts of such corporations in placing themselves under such jurisdiction by complying with the requirements of section 260, General Statutes. They are courts of general jurisdiction, but depending, in obtaining such jurisdiction over corporations, upon the statute in so far as the statute departs

from the common law in providing in what manner service can be had. We also conclude that Alsop, at the time of service, was a stockholder, and that the service upon him brought the appellee within the jurisdiction of that court, and that the court erred in sustaining the motions or pleas in abatement of the action. We advise that the judgment be reversed, and the cause remanded.

BISSELL and RICHMOND, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment below is reversed.

*Reversed.*