## Logan-Pocahontas Fuel Company v. Camp, Sr.

(Decided December 15, 1922.)

### Appeal from Knox Circuit Court.

1. Commerce—Corporations—Doing Business in Another State.—A corporation of one state may go into another, without obtaining leave or license of the latter, for all the legitimate purposes of interstate commerce, and any statute of the latter state which obstructs or lays a burden on the exercise of that privilege is void under the commerce clause.

2. Commerce—Corporations—Doing Business in Another State—Interstate Commerce.—Where a corporation, organized under the laws of West Virginia and engaged in the business of selling coal for deliveries in different states of the union, entered into a contract for the output of a coal mine in the state of Kentucky, with the view of supplying its customers with coal therefrom, the transaction was an incident to interstate commerce and was not within the legitimate scope of the provisions of section 571 of Kentucky Statutes.

SAWYER A. SMITH for appellant.

DISHMAN, TINSLEY & DISHMAN for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

The Logan-Pocahontas Fuel Company, a corporation organized under the laws of the state of West Virginia, filed its petition in the Knox circuit court against H. N. Camp, Sr., doing business in the name of the Camp Mining Company, to recover the sum of $96,000.00 damage alleged to have been sustained on account of the breach of a contract for the sale and delivery of coal.

The defendant denied the material averments of the petition, and alleged that he had no interest in or connection with the Camp Mining Company. In an amended answer he asserted the defense that plaintiff was doing business in Kentucky in violation of section 571 of Kentucky Statutes. Issue was joined on the affirmative defenses and, on the trial, at the conclusion of the plaintiff's

evidence, the jury, under a peremptory instruction from the court, returned a verdict for the defendant, on which judgment was rendered. The plaintiff is prosecuting this appeal.

The contract sued on was partially made at Elys, Kentucky, where the mine of the Camp Mining Company was located. It was not, however, finally agreed on, committed to writing and signed by M. T. Roach, vice president and general manager of appellant, until a few days later in Cincinnati, Ohio, and its approval by the chairman of the board of directors of the Logan-Pocahontas Fuel Company was not procured until a still later date, at Charleston, West Virginia. Under the terms of the contract appellant purchased the entire output of coal from the Camp Mining Company's mine at Elys, Kentucky, "based on daily output of approximately 500 tons per day, at ninety (90) cents per ton of 2,000 pounds," for the period commencing April 1, 1916, and ending March 31, 1917.

Appellant's evidence tended to show that from September, 1916, until March 31, 1917, appellee sold to other parties, from the output of the mine at Elys, approximately 20,000 tons of coal, which, if delivered to appellant, could have been sold by it at a profit of about $50,000.00. There was also evidence to the effect that H. N. Camp, Sr., owned the mine at Elys and the equipment thereon, and that in fact he was operating it in the name of the Camp Mining Company through his agent, H. N. Camp, Jr. But it was shown that appellant had not complied with section 571 of Kentucky Statutes, in that it had not appointed an authorized agent in the state upon whom process could be served, and had not filed in the office of the Secretary of State a statement, signed by its president or secretary, giving the location of its office or offices in the state or the name of any agent thereat upon whom process could be served. It was on this ground that the trial court gave the peremptory instruction. It is contended here that that ruling was erroneous: (1) Because appellant was not "doing business" in Kentucky at any of the times referred to in the petition; and, (2) the contract in question is incidental to interstate commerce, and is not, therefore, subject to the provisions of section 571 of the Kentucky Statutes. We deem it necessary to consider only the second of these contentions.

Appellant is a West Virginia corporation engaged in the business of selling coal for deliveries in different states of the union. It is in evidence that this contract was made for the purpose of supplying coal to appellant's customers, and that by far the greater part of the coal received thereunder was shipped by appellant to its customers in other states, although it does appear that a small part of it was consigned to Newport, Kentucky. We do not regard the latter fact, however, as determinative of the character of the contract, because that question, in our judgment, must be considered primarily in the light of the intention and purpose of the buyer at the time the contract was made; and it clearly appears that that purpose was to ship the coal to customers outside the state. Besides it is shown that a very small quantity of the coal was shipped to Newport, and there is nothing in this record to indicate that it was not ultimately destined to points outside the state. But if the points to which the shipments were consigned be regarded as decisive of the character of the contract, and if it be admitted that part of the coal was not only consigned to but was also delivered and consumed in Newport, the fact remains that the great bulk of it was shipped to points outside the state, and that predominating fact necessarily should and would give to the contract the character of interstate commerce. Accordingly, under either test, the transaction must be regarded as an incident to commerce between the states.

It is earnestly insisted for the appellee, however, that this question is concluded by Bondurant v. Dahnke-Walker Milling Co., 175 Ky. 774. In that case the appellee was a foreign corporation, and had not complied with section 571 of Kentucky Statutes. Through its agent, a citizen of Kentucky, it entered into a contract in the state of Kentucky to purchase a crop of wheat grown on the appellant's land during the year 1915, delivery to be made f. o. b. cars at Hickman, Kentucky, within a reasonable time after the wheat was threshed. The contract did not require the wheat to be consigned to a point outside the state, but it appeared that it had been the practice of the appellee to come into the state to purchase grain to be transported to and used in its mill in Tennessee. It was held by this court that the transaction was intrastate, and that section 571 of Kentucky Statutes was applicable. The Supreme Court of the United States, in an opinion delivered December 12,

1921, U. S. Adv. Ops. 1921-22, page 114, reversed this court's decision on the ground that a corporation of one state may go into another, without obtaining leave or license of the latter, for all the legitimate purposes of interstate commerce, and any statute of the latter state which obstructs or lays a burden on the exercise of that privilege is void under the commerce clause. It was pointed out, in that opinion, on the authority of numerous decisions, that commerce is a term of the largest import, including the transportation, purchase, sale and interchange of commodities, and that buying and selling and the transportation incidental thereto constitute commerce. It is true that reference in the opinion was made to the fact that the milling company, in continuance of its prior practice, was purchasing the grain for shipment to its mill in Tennessee, and it was intimated that the proof of that fact showed that which otherwise seemed an intrastate transaction to be interstate. But giving to that observation its broadest possible significance in the conclusion reached by the Supreme Court, we are, nevertheless, unable to discard the reasoning of the opinion as applicable to the case at bar. Appellant was a foreign corporation engaged in selling coal in different states. It had no business in Kentucky and had never had any; it merely purchased the output of a mine with the view, as the evidence conduces to show, of selling the coal to its customers in other states. To require, as a condition precedent to its right to enter into such a contract, that it comply with section 571 of the Kentucky Statutes would result in an imposition on interstate commerce beyond the power of the state to make. We hold, therefore, that the transaction was interstate commerce, and section 571 of Kentucky Statutes, as applied to it, imposes a burden repugnant to the commerce clause of the Constitution.

Wherefore the judgment is reversed and the cause remanded for further proceedings.