## STAR ELKHORN COAL CO. v. RED ASH POCAHONTAS COAL CO.
### No. 288.

United States District Court
E. D. Kentucky, at Pikeville.
July 13, 1951.

John Y. Brown, Harry B. Miller, Jr., Lexington, Ky., for plaintiff.

Baird & Hays, Pikeville, Ky., Leslie Meek, Cincinnati, Ohio, for defendant.

SWINFORD, District Judge.

This case is before the Court on the defendant's "motion to quash the issuance of summons and purported service of summons".

The motion presents two questions for determination:

1. Was the defendant doing business in the State of Kentucky so as to make it amenable to service of process on the Secretary of State of Kentucky under Section 271.610, subsection (2), Kentucky Revised Statutes?

2. Is it necesary that the defendant be doing business in the state at the time of service of process?

The term "doing business" has been so frequently discussed by courts and so variously applied in different cases that authority can be found for any position a court takes in a given state of fact. The facts in the case at bar, as disclosed by the present record, show that the defendant, a coal sales agency, had from one to four employees in Eastern Kentucky during the years 1947–48 for the purpose of purchasing, inspecting, accepting and rejecting coal at various tipples and mine offices. The first purchase of coal from the plaintiff was at its office in Kentucky in the amount of 20,000 tons. Other discussions were had, purchases made and necessary business matters attended to by agents of the defendant in the coal fields of Eastern Kentucky, in connection with the acquisition of many thousands of tons of coal by the defendant, continuously over a period of several months.

I am of the opinion the defendant corporation was doing business in the State of Kentucky to such an extent that it was "present" here and subject to the process of our courts.

In my judgment any corporation that makes it its business to systematically and continuously, over a reasonable period of time, solicit business in either selling or buying in a state is doing business within the state. I realize that many of the courts do not go this far, but undoubtedly the courts are steadily moving to the more reasonable and equitable rule that systematic solicitation alone is sufficient for jurisdiction over foreign corporations.

Why should it not be so? Their agents while here on their business for their profit have the protection and security of our police regulations and state institution. Such agents use our highways. They have access as individuals to all privileges of citizens in so far as comfort and convenience go.

Judge Learned Hand expressed what I believe should be the accepted rule in all courts in the case of Kilpatrick v. Texas & Pacific Railway Co., 2 Cir., 166 F.2d 788, 791. This district court had applied the "mere solicitation" rule and dismissed the case. In reversing the lower court the appellate court said: "The necessity that the corporation shall be 'present' at all arises from the territorial limitations of the power of a state—legislative, executive or judicial—in dealing with the legal relations of a person not in allegiance. In the case of individuals it has of course been long recognized that the defendant must, ordinarily, be subject to a capias when the action is begun, if a judgment against him in personam is to be valid. The same doctrine applies to corporations; but, since a corporation—whether it be regarded as a fabricated jural person, or an aggregate—is not identical with its members, spatial attributes can be ascribed to it only where its communal purposes are realized. It cannot be present in a place where none of its activities take place, and, literally at any rate, it is present wherever any of them do take place. It would therefore seem that, so far as it must be 'present' in order to satisfy the territorial limitation upon the powers of a court when acting in personam, it should be enough constitutionally that it shall have extended its activities into the territory where that court's process runs."

See also, Lesky v. Norfolk & Western Railway Co., 6 Cir., 1946, 157 F.2d 674.

The Supreme Court on February 25, 1946, handed down a decision in the case of Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 589, 90 L.Ed. 760, in which it used this language: " * * * that 'mere solicitation' when it is regular, continuous and persistent, rather than merely casual, constitutes 'doing business,' contrary to formerly prevailing notions."

I have examined and read with interest the cases on this point cited by counsel for

the defendant in his argument and in his brief. These cases have well recognized distinguishing factual features from those in the case at bar and no purpose would be served in discussing them in this opinion. Nearly all of them precede in point of time the case of International Shoe Company v. State of Washington, Office of Unemployment Compensation, 326 U.S. 310, 66 S.Ct. 154, 159, 90 L.Ed. 95, decided in December 1945, which must now be accepted as the leading case on the subject and which greatly liberalizes the rule in holding process valid where the "presence" of a foreign corporation within the state is at issue. This case practically overrules all other pronouncements of federal courts on the question.

The following quotations give both the history of the rule and the present proper constructions of what is meant by a foreign corporation "doing business" within a state:

" 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. St. Clair v. Cox, 106 U.S. 350, 355, 1 S.Ct. 354, 359, 27 L.Ed. 222; Connecticut Mutual Life Ins. Co. v. Spratley, 172 U.S. 602, 610, 611, 19 S.Ct. 308, 311, 312, 43 L.Ed. 569; Pennsylvania Lumbermen's Ins. Co. v. Meyer, 197 U.S. 407, 414, 415, 25 S.Ct. 483, 484, 485, 49 L.Ed. 810; Commercial Mutual Co. v. Davis, 213 U.S. 245, 255, 256, 29 S.Ct. 445, 448, 53 L.Ed. 782; International Harvester Co. v. Kentucky, [234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479], supra; cf. St. Louis S. W. R. Co. v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486. Conversely it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there. St. Clair v. Cox, supra, 106 U.S. 359, 360, 1 S.Ct. 362, 363; Old

Wayne Life Ass'n v. McDonough, 204 U.S. 8, 21, 27 S.Ct. 236, 240, 51 L.Ed. 345; Frene v. Louisville Cement Co., supra, 77 U.S.App.D.C. [129] 133, 134 F.2d [511], 515, 146 A.L.R. 926, and cases cited. To require the corporation in such circumstances to defend the suit away from its home or other jurisdiction where it carries on more substantial activities has been thought to lay too great and unreasonable a burden on the corporation to comport with due process.

\*      \*      \*      \*      \*      \*

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. \*  \*  \*

"Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure."

These quotations from International Shoe Co. v. Washington, supra.

In Logan-Pocahontas Fuel Co. v. Camp, Sr., 197 Ky. 174, 246 S.W. 433, cited by the

defendant, the court held that to require a foreign corporation engaged in shipping coal out of the state to comply with Section 571 of the Kentucky Statutes now KRS 271.090 was repugnant to the federal Constitution as it placed an undue burden on interstate commerce contrary to the commerce clause, Art. I, Sec. 8, cl. 3.

■ As applicable to this case, I do not believe such reasoning will be accepted in the state of this record. The federal Constitution does not preclude a state from giving needful protection to its citizens in their business contracts with outsiders when legislation by which this is accomplished is general in scope and does not aim at interfering with interstate commerce, but merely involves burdens incident to effective administration. Union Brokerage Co. v. Jensen, et al., 322 U.S. 202, 64 S.Ct. 967, 88 L.Ed. 1227.

For a comprehensive discussion of the history and present judicial application and construction of what is "doing business" in a state and solicitation as a basis of jurisdiction over a foreign corporation see the March 1951 issue of the Kentucky Law Journal, page 357.

After examining the briefs and authorities cited, again hearing the evidence from recordings and giving the questions more mature thought and deeper research, I am of the opinion my ruling at the oral hearing was correct and must be reaffirmed. The defendant was doing business in Kentucky in 1947–48.

The second question seems to me to be conclusively settled by the terms of Kentucky Revised Statutes Section 271.610 (1) and (2). There is no proof that the defendant was transacting any business in Kentucky at the time of service of process on September 29, (or October 31) 1950.

■ The cases cited on this point were decided before the enactment of this statute in 1946. Subsection (2) provides that where no process agent is named service may be made on the Secretary of State. Subsection (1) provides such service may be had if action is brought within four years after the date of withdrawal. This statute is comprehensive and meant to cover both those who have and those who have not complied with KRS 271.385.

The motion to quash the summons should be overruled. An Order to that effect is this day entered.