[S. F. No. 19841.   In Bank.   Mar. 26, 1958.]

HENRY R. JAHN AND SON, INC. (a Corporation), Petitioner, v. SUPERIOR COURT OF SAN MATEO COUNTY, Respondent; AMERICAN DRYING SYSTEMS, INC. (a Corporation), Real Party in Interest.

Joseph C. Meyerstein and Donald J. Kennedy for Petitioner.

No appearance for Respondent.

Pedder, Ferguson & Pedder and Robert J. Pedder for Real Party in Interest.

TRAYNOR, J.—Petitioner, Henry R. Jahn and Son, Inc., seeks a writ of mandate to compel the Superior Court of San Mateo County to set aside its order for substituted service of process and to quash service of summons on petitioner in an action brought by plaintiff, the real party in interest in this proceeding. (See Code Civ. Proc., § 416.3.) Dante J. Cacciari and Alexander Columbo, individually and as copartners doing business as the C & C Company, were joined as defendants in plaintiff's action. The superior court made an order allowing plaintiff to serve process on petitioner pursuant to section 6501 of the Corporations Code.* Thereafter petitioner appeared specially and moved to set aside the order for service of process and to quash the service of summons. These motions were denied.

Plaintiff alleged in its complaint that it entered into a series of three-party contracts with Jahn and various distributors in South and Central America for the purpose of marketing grain driers in those areas. Jahn had the exclusive right to sell plaintiff's products, and the distributors agreed not to handle competing products. Pursuant to these contracts, Jahn purchased driers from plaintiff and resold them through the various distributors. Business was conducted accordingly for over two years.

Defendants Cacciari and Columbo were associated with a company that manufactured driers for plaintiff according to secret plans and specifications supplied by plaintiff. They resigned from that company, taking plaintiff's plans and specifications with them. Thereafter they conspired with Jahn to

---

*Section 6501 of the Corporations Code reads: "If the agent designated for the service of process be a natural person and cannot be found with due diligence at the address stated in the designation or if such agent be a corporation and no person can be found with due diligence to whom the delivery authorized by Section 6500 may be made for the purpose of delivery to such corporate agent, or if the agent designated is no longer authorized to act, or if no agent has been designated and if no one of the officers or agents of the corporation specified in Section 6500 can be found after diligent search and it is so shown by affidavit to the satisfaction of the court or judge, then the court or judge may make an order that service be made by personal delivery to the Secretary of

take over plaintiff's business. Cacciari and Columbo formed a California partnership to manufacture and sell driers similar to plaintiff's driers, making use of plaintiff's plans and specifications. Jahn became the partnership's exclusive agent for exporting its driers. Jahn and the partners conspired to induce breaches of plaintiff's exclusive contracts with distributors, making use of confidential mailing lists and other data bearing on plaintiff's South and Central American business.

Plaintiff prayed that defendants be enjoined from inducing breaches of its distributorship contracts, using plaintiff's confidential mailing lists and other customer data, manufacturing and selling driers similar to plaintiff's driers, and using plaintiff's plans and specifications. It also prayed for an accounting of the business diverted by the foregoing activities, the appointment of a receiver, and exemplary damages.

█ There is no merit in Jahn's contention that the affidavit for service on the Secretary of State did not meet the requirements of Corporations Code section 6501. The existence of the required facts was alleged directly and without qualification. (*Cf., Columbia Screw Co.* v. *Warner Lock Co.,* 138 Cal. 445, 447 [71 P. 498].) The statute does not provide that the affidavit cannot be made by the plaintiff's attorney.

Jahn further contends that it was not and is not doing business in this state within the meaning of Code of Civil Procedure, section 411, subdivision 2, and is therefore not subject to service of process pursuant to Corporations Code section 6501.

█ The statute authorizes service of process on foreign corporations that are "doing business in this State." That term is a descriptive one that the courts have equated with such minimum contacts with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].) Whatever limitation it imposes is equivalent to that of the due process clause. █ "'[D]oing business' within the meaning of section 411 of the Code of Civil Procedure is synonymous with the power of the state to subject foreign corporations to local process." (*Eclipse Fuel etc. Co.* v. *Supe-*

---

State or to an assistant or deputy secretary of state of two copies of the process together with two copies of the order, except that if the corporation to be served has not filed the statement required to be filed by Section 6403 then only one copy of the process and order need be delivered but the order shall include and set forth an address to which such process shall be sent by the Secretary of State."

*rior Court,* 148 Cal.App.2d 736, 738 [307 P.2d 739] ; see also *Gray* v. *Montgomery Ward, Inc.,* 155 Cal.App.2d 55, 58 [317 P.2d 114] ; *McClanahan* v. *Trans-America Ins. Co.,* 149 Cal.App.2d 171, 172 [307 P.2d 1023] ; *Jeter* v. *Austin Trailer Equipment Co.,* 122 Cal.App.2d 376, 387 [265 P.2d 130] ; *Kneeland* v. *Ethicon Suture Laboratories, Inc.,* 118 Cal.App. 2d 211, 218-224 [257 P.2d 727], and cases cited; *LeVecke* v. *Griesedieck Western Brewing Co.,* 233 F.2d 772, 775 ; *Kenny* v. *Alaska Airlines, Inc.,* 132 F.Supp. 838, 850.)

▮ Jahn's purchase of goods in this state is a regular part of its business. It nevertheless contends that it is not amenable to suit here, invoking *Rosenberg Bros. & Co.* v. *Curtis Brown Co.,* 260 U.S. 516 [43 S.Ct. 170, 67 L.Ed. 372]. The United States Supreme Court, however, has advanced beyond the presence theory of jurisdiction underlying that case. (*McGee* v. *International Life Ins. Co.,* 355 U.S. 220 [78 S.Ct. 199, 200, 2 L.Ed.2d 223] ; see also *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316-317 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].) Under the minimum contacts test of the International Shoe case regular sales solicitation alone can constitute doing business rendering the foreign corporation amenable to process in actions engendered by such activities. (See *Travelers Health Assn.* v. *Virginia,* 339 U.S. 643, 648-649 [70 S.Ct. 927, 94 L.Ed. 1154] ; *Nippert* v. *Richmond,* 327 U.S. 416, 426 [66 S.Ct. 586, 90 L.Ed. 760, 162 A.L.R. 844] ; *Scholnik* v. *National Airlines, Inc.,* 219 F.2d 115, 119 ; *Frene* v. *Louisville Cement Co.,* 77 App.D.C. 129 [134 F.2d 511, 515-517, 146 A.L.R. 926] ; *Jeter* v. *Austin Trailer Equipment Co.,* 122 Cal.App.2d 376, 385 [265 P.2d 130] ; *Koninklijke L. M.* v. *Superior Court,* 107 Cal.App.2d 495, 500 [237 P.2d 297].) Since there is no distinction for jurisdictional purposes between regular selling and regular buying (*Sterling Novelty Corp.* v. *Frank & Hirsch Distributing Co.,* 299 N.Y. 208, 210 [86 N.E.2d 564] ; *Star Elkhorn Coal Co.* v. *Red Ash Pocahontas Coal Co.,* 102 F.Supp. 258, 259), the Rosenberg case is as obsolete for the one as for the other. Many cases anteceding the Rosenberg case and many since the International Shoe case have sustained jurisdiction on the basis of the defendant's purchasing activities in the state. (*Colorado Iron-Works* v. *Sierra Grande Min. Co.,* 15 Colo. 499 [25 P. 325, 327-328, 22 Am.St.Rep. 433] ; *Premo Specialty Mfg. Co.* v. *Jersey-Creme Co.,* 118 C.C.A. 458 [200 F. 352, 356, 43 L.R.A.N.S. 1015] ; *Dungan, Hood & Co.* v. *C. F. Bally, Limited,* 271 F. 517, 519 ; *Payne & Joubert* v. *East Union*

*Lumber Co.*, 109 La. 706 [33 So. 739, 740-741]; *Duluth Log Co.* v. *Pulpwood Co.*, 137 Minn. 312 [163 N.W. 520, 521]; *Sterling Novelty Corp.* v. *Frank & Hirsch Distributing Co.*, 299 N.Y. 208, 212 [86 N.E.2d 564]; *National Furniture Co.* v. *Wm. Speigelman & Co.*, 198 App.Div. 672 [190 N.Y.S. 831, 832]; *Scheier* v. *Stoff*, 142 N.Y.S.2d 716, 717; *Star Elkhorn Coal Co.* v. *Red Ash Pocahontas Coal Co.*, 102 F.Supp. 258, 259; see also *Johnson* v. *Atlantic & Pacific Fisheries Co.*, 128 Wash. 578 [224 P. 13, 14].)

The Supreme Court has emphasized its departure from the presence test by the significance it now attaches to the fact that the cause of action arises out of the defendant's contacts with the state asserting jurisdiction. The Rosenberg case deemed it immaterial that the cause of action arose out of the corporation's New York activities, on the ground that its total activities there did not support the conclusion that it was present. ■ Now, however, it "is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with . . . [the] State." (*McGee* v. *International Life Ins. Co.*, 355 U.S. 220 [78 S.Ct. 199, 201, 2 L.Ed.2d 223].) ■ "But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." (*International Shoe Co.* v. *Washington*, 326 U.S. 310, 319 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].)

■ Whenever litigation arises out of business transactions conducted across state lines between parties whose principal places of business are in different states, there may be hardship to the party required to litigate away from home. There is no constitutional requirement, however, that this hardship must invariably be borne by the plaintiff whenever the defendant is not deemed present in the state of plaintiff's residence. In some circumstances there is adequate basis for jurisdiction when the defendant has elected to deal with the plaintiff even though only by mail. (*McGee* v. *International Life Ins. Co.*, 355 U.S. 220 [78 S.Ct. 199, 201, 2 L.Ed.2d 223]; *Parmalee* v. *Iowa State Traveling Men's Assn.*, 206 F.2d 518, 522.) Again, there is jurisdiction when the cause of action arose

out of the breach of a contract made and to be performed in the state (*Compania De Astral, S. A.* v. *Boston Metals Co.,* 205 Md. 237 [107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646], cert. den., 348 U.S. 943 [75 S.Ct. 365, 99 L.Ed. 738]; see also *S. Howes Co.* v. *W. P. Milling Co.,* —— Okla. —— [277 P.2d 655, 657-658]) or even out of a mere isolated act in the state by the defendant or his agent. (*Nelson* v. *Miller,* 11 Ill.2d 378 [143 N.E.2d 673]; *Smyth* v. *Twin State Improvement Corp.,* 116 Vt. 569 [80 A.2d 664, 25 A.L.R.2d 1193]; *Hess* v. *Pawloski,* 274 U.S. 352 [47 S.Ct. 632, 71 L.Ed. 1091]; *Johns* v. *Bay State Abrasive Products Co.,* 89 F.Supp. 654.)

We need not here determine whether an action arising from an isolated purchase of goods here through interstate communication would subject Jahn to the jurisdiction of the California courts. Jahn made regular purchases from plaintiff as its exclusive export agent. It took title to the goods in this state. It directed its agent how and where to ship them. Even after it ceased doing business with plaintiff, it entered into a similar course of business dealings with defendant partnership. It reaped the benefits of our laws that protected its goods while they were here, and it had access to our courts to enforce any rights in regard to these transactions. The alleged cause of action grew directly out of Jahn's relationship with plaintiff and the partnership in this state. (See *Giusti* v. *Pyrotechnic Industries,* 156 F.2d 351, 354; *Steiner* v. *20th Century-Fox Film Corp.,* 232 F.2d 190, 198; *DeGolia* v. *Twentieth Century-Fox Films Corp.,* 140 F.Supp. 316.) Although some of the evidence may be more readily available in New York, there is other evidence already here. That which must be secured from overseas can as easily be presented here as in New York. The inconvenience to Jahn in defending here is relevant (*International Shoe Co.* v. *Washington,* 326 U.S. 310, 317 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057]), but "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party

sued to defend himself in a State where he engages in economic activity." (*McGee* v. *International Life Ins. Co.*, 355 U.S. 220 [78 S.Ct. 199, 201, 2 L.Ed.2d 223].) It also bears emphasis that if plaintiff were unable to bring an action against Jahn here, it would be similarly frustrated with regard to Jahn's codefendants in New York. Two actions instead of one would then be necessary to litigate the existence or nonexistence of a single tortious conspiracy.

■ "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. [Citations.] Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." (*International Shoe Co.* v. *Washington*, 326 U.S. 310, 319 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].)

■ Jahn's burden of defending here is no greater than plaintiff's burden of suing in New York. The cause of action is directly related to Jahn's dealings with the California plaintiff and the California defendants. A denial of jurisdiction would lead only to a duplicity of litigation. "[T]he quality and nature of the activity in relation to the fair and orderly administration of the laws" fully justifies subjecting Jahn to the jurisdiction of our courts.

The alternative writ is discharged and the peremptory writ denied.

Gibson, C. J., Shenk, J., Carter, J., and Spence, J., concurred.

McComb, J., dissented.

SCHAUER, J., Dissenting.—From the record in this case the following facts appear: Petitioner has at no time maintained any offices in California, or made any sales or sales solicitations here. It is the exclusive export agent for American Drying Systems, Inc. (real party in interest), and also the agent for one other California manufacturer. Petitioner places its orders for purchase of the products of these two manufacturers by mail or telephone from New York, and,

although the course of purchases is regular, no purchase orders are placed from California. The goods are shipped f.o.b. California, are packaged for shipping in California, and are shipped by the manufacturers to a general forwarding company in California. The forwarding company is selected by petitioner, and receives its shipping instructions directly from petitioner. On two occasions, when the orders were rather large, petitioner sent one of its auditors to California with the check for payment, and he ascertained that the order was properly filled before making payment. Petitioner has apparently had no contacts with California other than those just mentioned.

In the light of the basic facts it appears that in holding that petitioner was "doing business in this State" so as to subject it to service of process pursuant to section 6501 of the Corporations Code, the majority opinion indicates a trend toward, if not implicitly an actual, holding that all persons residing and doing business outside California but who place orders by telephone or correspondence for goods in this state and who arrange (as they must, if the orders are to be filled) for packing, shipping and delivery of the goods so purchased, will thereby become subject to the jurisdiction of California courts and subject to suit in this state. Such a holding seems especially unfortunate and undesirable, particularly for the manufacturers and producers of California, as it must inevitably tend to deter those who are in the market for California products from sending to this state for them. It is a matter of common knowledge that efforts are constantly being made by the various states on both a governmental and a private industry level to attract additional industry and commerce, and I believe that where, as here, the law is at least equally open to a contrary ruling, the court should not choose the course which will be detrimental to the interests of California.

I would grant the peremptory writ.