[Civ. No. 8329.   Fourth Dist., Div. Two.   July 7, 1967.]

JOE E. LONG, Plaintiff and Appellant, v. MISHICOT MODERN DAIRY, INC., Defendant and Respondent.

William L. Anderson for Plaintiff and Appellant.

Arnold G. Hewett for Defendant and Respondent.

TAMURA, J.—Plaintiff appeals from an order granting a motion to quash service of summons on defendant, a Wisconsin corporation. Defendant was served in the manner provided by section 411, subdivision 2, of the Code of Civil Procedure by service upon the Secretary of State of the State of California who, in turn, sent defendant a copy of the summons and complaint by certified mail to its address in Wisconsin.

Section 411, subdivision 2, of the Code of Civil Procedure provides that if the suit is against a foreign corporation ''doing business in this state,'' summons may be served in the manner provided by sections 6500-6504 of the Corporations Code. The sole issue on this appeal is whether defendant was ''doing business'' in this state within the meaning of section 411, subdivision 2.

Plaintiff filed an action against defendant in the Superior Court in Orange County for breach of contract for the sale of land alleging that defendant, through its duly authorized agent, Hugo C. Drumm, entered into a written agreement to sell plaintiff some 13 acres of land owned by defendant and situated in Orange County, that an escrow was opened in Orange County to consummate the transaction, that pursuant to the terms of the agreement plaintiff paid defendant, through escrow, $10,000 which was to be applied to the purchase price, and that defendant breached the agreement. The

complaint sought damages in the sum of $80,000 and, by a separate cause of action, restitution of the $10,000.

Defendant appeared specially and moved to quash service of summons and complaint. In support of its motion, it submitted a declaration signed by Hugo C. Drumm in which he stated that he was not and never had been an officer or shareholder of defendant, its general manager in California, or its agent in California for service of process. He declared that the primary business of defendant is the manufacture and sale of cheese in Wisconsin and that its only activity in California was the ownership of the land in question and the entry into the escrow agreement for its sale to plaintiff.

In opposition, plaintiff filed his declaration setting forth the following facts: Plaintiff is a resident of the State of California. Defendant, a Wisconsin corporation, listed the subject property for sale with a firm of California realtors. Thereafter plaintiff and defendant executed an agreement and escrow instructions for the sale of the property to plaintiff, defendant at all times being represented by and acting through its agent, Hugo C. Drumm. Under the agreement defendant was to procure a survey and title policy and assist in obtaining a rezoning of the property to make it available for subdivision purposes. In order to eliminate a title problem pertaining to an access easement, defendant, during the pendency of the escrow, commenced a quiet title action in the Superior Court of Orange County. In addition, also pending the escrow, defendant petitioned the Planning Commission of the City of Orange for a rezoning of the subject property and made appearances before that body as well as before the Orange County Planning Commission and the Orange County Board of Supervisors in support of the requested rezoning and in connection with a proposed street alignment affecting the property. Defendant breached the agreement. A school district thereafter filed an action in eminent domain to acquire the property for a school site and the defendant subsequently deeded it to the district. The agreement between plaintiff and defendant was made in and was to be performed in Orange County, California. All of the original documents pertaining to the sale including escrow instructions, title reports, surveys, and other pertinent records are located in the County of Orange. Defendant's agent, Hugo C. Drumm, is a resident of Orange County, California.

Since the material facts are not in conflict, the question whether the defendant is subject to jurisdiction in per-

sonam presents a question of law. The trial court's determination of that issue is, therefore, not binding on this court. (*Cosper* v. *Smith & Wesson Arms Co.*, 53 Cal.2d 77 [346 P.2d 409], cert. den. 362 U.S. 927 [4 L.Ed.2d 746, 80 S.Ct. 755]; *H. Liebes & Co.* v. *Erica Shoes, Inc.*, 237 Cal.App.2d 25, 30 [46 Cal.Rptr. 470].)

Service of process may be made on a foreign corporation in the manner provided by section 411, subdivision 2, of the Code of Civil Procedure if the corporation is "doing business" in the state. The reach of the "doing business" requirement of section 411, subdivision 2, of the Code of Civil Procedure has been equated with the limits of the due process requirement as defined in *International Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057]; that is, the foreign corporation must have ". . . certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." (*Empire Steel Corp.* v. *Superior Court*, 56 Cal.2d 823, 829 [17 Cal.Rptr. 150, 366 P.2d 502]; *Fisher Governor Co.* v. *Superior Court*, 53 Cal.2d 222, 224 [1 Cal.Rptr. 1, 347 P.2d 1]; *Cosper* v. *Smith & Wesson Arms Co.*, *supra*, 53 Cal.2d 77, 82, cert. den. 362 U.S. 927 [4 L.Ed.2d 746, 80 S.Ct. 755]; *Henry R. Jahn & Son* v. *Superior Court*. 49 Cal.2d 855, 858 [323 P.2d 437].) "Whatever limits [the "doing business" requirement] imposes is equivalent to that of the due process clause." (*Fisher Governor Co.* v. *Superior Court*, *supra*; *Henry R. Jahn* v. *Superior Court*, *supra*; *Cosper* v. *Smith & Wesson Arms Co.*, *supra*.)

In determining what "minimum contacts" are sufficient, a distinction must be drawn between a cause of action arising out of or related to activity within the state and one not so related. In the latter instance, more extensive contacts are required. (*Fisher Governor Co.* v. *Superior Court*, *supra*, 53 Cal.2d 222, 225; *Henry R. Jahn & Son* v. *Superior Court*, *supra*, 49 Cal.2d 855, 860.)

Thus, although mere ownership of land may not be sufficient to subject a nonresident to personal jurisdiction in an unrelated cause of action, it may be sufficient if the cause of action is related to such ownership. (Goodrich, Conflict of Laws, (4th ed.), § 73, p. 118.)

Where the cause of action arises out of economic activity within the forum state, the contacts need not consist of repeated or continuous business transactions. (*McGee* v. *Inter-*

*national Life Ins. Co.*, 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199] ; Goodrich, Conflict of Laws, *supra,* (4th ed.) § 76, p. 135.) An isolated transaction may be sufficient. In *McGee* the issuance of a single policy of insurance by mail to a resident of California was held sufficient to confer in personam jurisdiction on a cause of action arising out of the contract of insurance, the court stating, ". . . It is sufficient for purposes of due process that the suit was based on a contract which had substantial contacts with that State. . . ." In *James R. Twiss, Ltd.* v. *Superior Court*, 215 Cal.App.2d 247 [30 Cal. Rptr. 98], the only contact of the foreign corporation with California was the single entry of its vessel into a California port for emergency repairs. In plaintiff's personal injury action for injuries allegedly sustained in the repair of the vessel, the court held that the foreign corporation was amenable to substituted service.

In *Henry R. Jahn & Son* v. *Superior Court, supra,* 49 Cal. 2d 855, 860, the court noted that ". . . [T]here is jurisdiction when the cause of action arose out of the breach of a contract made and to be performed in the state. . . ," citing *Compania De Astral, S.A.* v. *Boston Metals Co.*, 205 Md. 237 [107 A.2d 357; 108 A.2d 372; 49 A.L.R.2d 646]; cert. den., 348 U.S. 943 [99 L.Ed. 738, 75 S.Ct. 365]. *Compania De Astral, supra,* held that as applied to the facts before it, a Maryland statute permitting substituted service in an action by a resident of the state or by one having his usual place of business in the state against a foreign corporation on a cause of action arising out of a contract made in Maryland met the due process standards enunciated in *International Shoe Co.* v. *Washington, supra,* 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057]. The action arose out of a contract, made and to be performed in Maryland, for the sale of vessels located in that state. Although there was but a single transaction within the state, the fact that the foreign corporation engaged in various preliminary activities in the state in negotiating the contract, including inspection of the vessels, the fact that the escrow was established in Maryland, and the fact that the contract provided that it should be interpreted in accordance with Maryland law were held to constitute sufficient contacts with the state and reliance upon its laws and the protection which they afforded to meet the jurisdictional test of *International Shoe Co.* v. *Washington, supra.*

Statutes similar to the Maryland statute have been enacted in other states. (Goodrich, Conflict of Laws (4th ed.), *supra,*

§ 73, p. 129. fn. 209.) In *State* v. *Register* (Fla.) 67 So.2d 619, the court held that a Florida statute which provided for substituted service on nonresident persons or corporations who " '. . . operate, conduct, engage in, or carry on a business or business venture. . . .' " in the state permitted substituted service on nonresident owners of an orange grove situated in Florida in an action brought by a Florida real estate broker to recover commissions under a listing agreement for the sale of the property. The court held that the nonresidents engaged in a "business venture" within the meaning of the statute when they entered into a contract with the Florida broker to effect a sale of Florida realty.

In *Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, 225-226, the court through Justice (now Chief Justice) Traynor prescribed the following guide lines for determining when contacts are sufficient to make it reasonable to subject the foreign corporation to personal jurisdiction: "The interest of the state in providing a forum for its residents [citations] or in regulating the business involved [citations] ; the relative availability of evidence and the burden of defense and prosecution in one place rather than another [citations] ; the ease of access to an alternative forum [citations] ; the avoidance of multiplicity of suits and conflicting adjudications [citations] ; and the extent to which the cause of action arose out of defendant's local activities [citations] are all relevant to this inquiry." For the relevancy of such "litigational considerations," see also Von Mehren and Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis* (1966) 79 Harv.L.Rev. 1121, 1173.

Those considerations justify holding defendant amenable to personal jurisdiction in the instant case. Plaintiff is a resident of this state; the action arises out of a contract, made and to be performed in this state, for the sale of land located in this state; defendant has availed itself of the privilege of engaging in economic activity in this state and has enjoyed the benefits and invoked the protection of its laws, administrative agencies and courts; California law will determine the rights and obligations of the parties under the contract sued upon *(Losson* v. *Blodgett,* 1 Cal.App.2d 13, 18 [36 P.2d 147] ; Civ. Code, § 755; Witkin, Summary of Cal. Law (1960) § 9, p. 869 ; Goodrich, Conflict of Laws (4th ed.), *supra,* § 149, p. 296.) ; and the documentary evidence and witnesses are in this state. In these circumstances, it is reasonable that the lawsuit be adjudicated in this state. "Fair play and substan-

tial justice" are not offended by requiring defendant to respond to the instant action.

Defendant relies upon *Davies* v. *Mt. Gaines Min. & Mill. Co.*, 104 Cal.App. 730 [286 P. 740], and *Conference Free Baptists* v. *Berkey*, 156 Cal. 466 [105 P. 411]. They are not controlling. In *Davies, supra,* plaintiff deeded certain mining property to defendant, a foreign corporation. Thereafter it brought an action to set aside the deed on the sole ground that the corporation had not qualified to do business in California by filing a copy of its articles of incorporation and other documents with the Secretary of State. The court held that the mere ownership of property did not require compliance with the statute. *Conference Free Baptists, supra,* involved an interpretation of the phrase "to transact business" as used in section 15 of article XII of the California Constitution providing that foreign corporations shall not be allowed "to transact business" within the state on more favorable conditions than the law prescribes for domestic corporations. The court held that an isolated sale of a parcel of land by a religious corporation was unrelated to its "ordinary business" and did not constitute "transacting business" within the meaning of the constitutional provision. Those cases were not concerned with the exercise of the power to subject foreign corporations to in personam jurisdiction on a cause of action arising out of local activity. Moreover, they are of a vintage when jurisdiction was still based upon concepts of implied consent and physical presence, fictions which have since been discredited by *International Shoe Co.* v. *Washington, supra,* 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057], Goodrich, Conflict of Laws (4th ed.), *supra,* § 73, p. 115.

Defendant also seeks to distinguish *McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199], and *James R. Twiss, Ltd.* v. *Superior Court, supra,* 215 Cal.App.2d 247, on the ground that state activity in those cases was in furtherance of the principal business of the corporation whereas in the instant case defendant's California activity was unrelated to its usual business. We perceive no rational basis for holding that the assertion of personal jurisdiction in a cause of action arising out of an isolated transaction offends "traditional notions of fair play and substantial justice" simply because the cause of action arises out of a contract for the sale of land rather than for the sale of defendant's product. The distinction suggested by defendant is

not of controlling significance under the rationale of the minimum contacts'' test enunciated in *International Shoe Co.* v. *Washington, supra,* 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 159-160, 161 A.L.R. 1057], where the court stated: ''It is evident that the criteria by which we mark the boundary line between . those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. [Citations] Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. [Citations.]

''But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. [Citations.]''

The order granting the motion to quash is reversed.

Kerrigan, Acting P. J., and Thompson (Raymond), J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.