[Civ. No. 13629. First Dist., Div. One. Dec. 16, 1947.]

ORO NAVIGATION COMPANY (a Corporation), Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Graham & Morse for Petitioner.

Gladstein, Andersen, Resner & Sawyer and Herbert Resner for Respondent.

WARD, J.—An alternative writ of prohibition was issued by this court on the petition of defendant relative to an action entitled *Anderson* v. *Oro Navigation Co.*, a corporation, filed in the superior court of this state. Plaintiff Anderson claimed damages based upon the alleged negligence of petitioner as owner and operator of the "SS Telfair Stockton." Summons was served upon the secretary of the General Steamship Corporation, Limited, at its San Francisco office. Defendant

Oro Navigation Company, petitioner herein, filed a special appearance in the trial court to quash the service of summons upon it on the ground that it was not present in the State of California at the time of the service. It is alleged in the present petition that the trial court, unless restrained, will hear and try the allegations of the complaint in *Anderson* v. *Oro Navigation Co.* and threatens to enter a default judgment.

The Oro Navigation Company, a Nevada corporation, acquired the SS Telfair Stockton, a ship of the steam freighter class, from the United States Maritime Commission in May, 1947. At about that time the Oro Company had officers and stockholders who were residents of the State of California. The petition alleges that the Oro Company employed General Steamship Corporation, Limited, to assist it in accepting delivery of the SS Telfair Stockton and in preparing the vessel for operation by the Oro Company. The United States Treasury Department, through the United States Coast Guard, issued "Shipping Articles (R.S. 4612, as amended—U.S.C., title 46, sec. 713." These "Articles of Agreement between Master and Seamen . . . Required by act of Congress, title LIII, Revised Statutes of the United States (U.S.C., title 46, ch. 18)" provide that it is obligatory that "a legible copy of the agreement . . . be placed or posted up in such part of the vessel as to be accessible to the crew." (46 U.S.C.A. § 577, p. 43.) The articles, dated May 29, 1947, designate Oro Navigation Company as the "Owner," and General Steamship Corporation, Limited, as the "Operating Mgrs."

On June 2, 1947, the Oro Navigation Company made an employment contract with Anderson as a member of the crew. According to the articles, the vessel was to sail from the port of San Francisco to "South and/or East Africa, either direct or via a port or ports on the Pacific, thence to such other ports and places in any part of the world." The articles provide that the final port of discharge shall be in the United States. So far as the present record discloses, San Francisco, California, is the only port definitely referred to, except that there is the statement that Anderson was "aboard said vessel at Portland, Oregon, on or about June 17, 1947."

Anderson was injured aboard the SS Telfair Stockton at Portland, Oregon, on or about June 17, 1947, while a member of the crew of the vessel. Petitioner sets forth that as of July 1, 1947, the vessel left the Pacific Coast for operation in foreign commerce and that by such date the General Steam-

ship Corporation, Limited, had completed its services for petitioner. This fact gives rise to petitioner's claim that the General Steamship Corporation, Limited, had been displaced as "Operating Mgrs." on July 1, 1947. On or about July 15, 1947, residents of New York were elected officers and directors of the Oro Company replacing the residents of California who had occupied such positions, and the offices of the company were removed from San Francisco to New York City. It is alleged that since July 15, 1947, the Oro Company has had no officer or agent present in the State of California. There is no claim made that Anderson, the injured employee, or any other member of the crew, was ever notified of either a change of officers or place of business. It must be assumed that Anderson believed that the "Shipping Articles" stated the fact. On August 27, 1947, Anderson's complaint was filed and summons was served upon the secretary of the General Steamship Corporation, Limited.

There is no merit to petitioner's contention that as service was made on August 27, 1947 upon the General Steamship Corporation, Limited, which had completed its services for petitioner by July 1, 1947, no jurisdiction was obtained over petitioner. Corporation Code, section 6701 (Stats. 1947, ch. 1038, p. 2409), formerly Civil Code, section 411, provides that "Mere retirement from transacting business within this State without filing a certificate of withdrawal does not revoke the appointment of any agent for the service of process within this State." Furthermore, it is through petitioner's conduct in describing General Steamship Corporation, Limited, as "Operating Mgrs." on the articles, that Anderson caused summons to be served upon General Steamship Corporation, Limited. Code of Civil Procedure, section 1962, subdivision 3, provides: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

Service of process upon a corporation must be made at a place wherein the court which issued the process has obtained jurisdiction in a legal mode prescribed by the statutes of the place of service or by the provision of a United States statute. (*Doe* v. *Springfield Boiler & Mfg. Co.*, 104 F. 684 [44 C.C.A. 128].) Judicial decisions often express this rule by stating that the corporation must "be present" within the jurisdiction

where service is made at the time of service. "Presence" does not necessarily refer to the state wherein the articles of incorporation were filed, the location of the corporation's residence in directing the conduct of its business or the main site of operating activity. "Presence" means transacting business which is not merely an isolated transaction. (*International Shoe Co.* v. *Washington,* 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].) Likewise, the transaction should have a relation to the purpose for which the corporation was formed. Whether the corporation is "present" after a discontinuance of some former activity ordinarily presents a question of fact to be determined by established rules of law controlling within the jurisdiction where the foreign corporation was served. In this case the laws of California are applicable.

The view of the federal courts on the matter is seen in *Giusti* v. *Pyrotechnic Industries, Inc.,* 156 F.2d 351. In that case, Triumph Fusee & Fireworks Company was one of many alleged corporations both of California and of other states, in an action charging violation of the antitrust act. The complaint named Triumph, a Delaware corporation, as one of several defendants engaged in business in California. The fact that the Triumph Company had transacted intrastate business was the factual ground upon which it was decided that service of plaintiff's summons in that action on the designated California agent, the secretary of state, was a valid service. It was declared by the United States Circuit Court that the United States District Court had jurisdiction of the subject matter and the person sued, based upon statutory provisions then designated as California Civil Code, sections 411, 406a and 405.

The Civil Code sections covering corporation law have been redesignated as sections of the Corporation Code. (Stats. 1947, ch. 1038, p. 2309.) Corporation Code, sections 6700 and 6701 (Stats. 1947, ch. 1038, pp. 2408-2409), formerly Civil Code, section 411, permits a corporation which has the right to transact intrastate business to surrender such right by filing with the Secretary of State a certificate. Corporation Code, section 6504 (Stats. 1947, ch. 1038, p. 2408), formerly a part of Civil Code, section 406a, reads: "A foreign corporation which has transacted intrastate business in this State and has thereafter withdrawn from business in this State may be served with process in the manner provided in this chapter

in any action brought in this State arising out of such business, whether or not it has ever complied with the requirements of Chapter 3 of this part.'' This is the same rule stated in Restatement of the Law, Judgments, ch. 2, topic 3, tit. C., § 30, p. 123.) Chapter 3, including sections 6400, 6401, 6402 and 6403, of the new Corporation Code covers part of former Civil Code, section 405, and in particular the subject of the qualification for foreign corporations to transact intrastate business in California. Corporation Code, section 6504 (formerly a part of Civ. Code, § 406a) permits service on the withdrawn corporation whether or not it has complied at any prior time with the requirement of filing its articles of incorporation and designating a person in the state upon whom process may be served if the action upon which the process is based arose out of business previously conducted in California.

The Legislature, in enacting the last paragraph of Civil Code, section 406a, and its reenactment into the Corporation Code, section 6504, appears to have given due consideration to the rights of claimants and corporations. The provision hereafter may be referred to by its corporate code designation.

■ The purpose of the various sections dealing with service of summons upon a foreign corporation is to give an aggrieved party a means of bringing a foreign corporation into a proper jurisdictional tribunal and to protect the corporation through the enactment of statutes providing methods and means of security from default judgments. ■ If the corporation does not avail itself of statutory protective provisions and is aware of the filing of an action for damages and service of summons upon an alleged agent, who in turn gives timely notice of such service to the principal, it should not be permitted to take advantage of a technicality, the merit of which must be founded upon its inadvertent neglect or deliberate failure to comply with the law, or upon some changed condition in transferring the main office without notification to the employees. With the above test in mind the facts as presented on this application, and the applicable rules of law, may be considered.

■ Corporation Code, section 6504 provides that the corporation shall have transacted ''intrastate business in this State.'' That petitioner transacted intrastate business in this state at a period prior to Anderson's injury appears from the petition by the following allegation: ''. . . that it maintained an office and had officers and stockholders residents of the

State of California." In addition, it caused the SS Telfair Stockton to be prepared and to be accepted "for operation under the ownership of the Oro Navigation Company." The latter conduct is intrastate business contracted and performed and completed in this state. The maintenance of an office, the preparation of the vessel, contracting with 56 seamen and apprentices from various foreign countries or different states in this country, and many other duties, were tasks that devolved upon the principal or through the agency of the operating managers.

 Petitioner, in support of its contention that the Oro Company was not present in California at the time of service of the summons upon the agent of that company, cites *Holland* v. *Parry Navigation Co., Inc.*, 1947 A.M.C. 1435. In that case the Parry company was not registered to do business in Pennsylvania. The work of a Philadelphia company acting as managing agent was less in scope than that of the managing operators in the present case. Vessels of the Parry Company entered the port of Philadelphia and the managing agents represented the Parry Company during such periods. The trial court held that the business conducted by the agents was sufficient "to make it amenable to service of process in this jurisdiction" but that as a question of fact there was no relation of principal and agent on the date of service of summons. The writer of the opinion does not put the thought into words, but indicates that the facts of each case under the legal provisions of the existing law at the place of service control. This is demonstrated by pointing out that in the Parry opinion the court notes the "striking similarity in the facts between the instant case" and *Jenkins* v. *Lykes Bros. S.S. Co.*, 48 F. Supp. 848, which was written by the same district judge. In the Jenkins case, the court said (p. 850) : "The second question is whether service on Kurz as Lykes' agent is legally sufficient to constitute service on Lykes. Under Rule 4(d) (7) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, service is valid if made 'in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process . . . in an action brought in the courts of general jurisdiction of that state.' By the Pennsylvania Act of April 8, 1851, P.L. 353, 12 P.S. sec. 1310, a foreign corporation having an agency in any county of Pennsylvania may be validly served by a service of a summons upon the 'president, cashier, agent, chief or

any other clerk, or upon any directors or agent' in such county.'' No provision is noted similar to California Corporation Code, section 6504, *supra*. The factual difference, as indicated by the district judge, between the Lykes and the Parry cases appears to be that in the former, the business of the agent was practically continuous whereas in the Parry case, it was occasional and sporadic. The court also pointed out that although ''it did not appear in the Lykes opinion,'' the agent there was actually performing his duties, whereas in the Parry case there was no relationship of principal and agent in existence at the time service was made.

In the absence of a statutory provision, no judicial uniform rule should be invoked upon a question which is based in each case upon variant facts. (*Marcum* v. *Owens-Parks Lumber Co.*, 31 F.Supp. 748.) In the last-cited case, it was determined that in view of the failure of a California corporation to designate an agent in the state of Washington, the master of the steamship, upon whom service of summons was made, was its agent with reference to the transaction out of which the claim arose, namely, an action for damages arising out of the employment of a dock employee for injuries sustained in unloading of cargo.

In *Thew Shovel Co.* v. *Superior Court*, 35 Cal.App.2d 183 [95 P.2d 149], a representative of the Thew Company during a trip from his home state to California sought to compromise a claim against his company. No question of authorization of the representative to compromise the claim was involved in that case. It may appear to be an isolated transaction, but in fact it was the outgrowth of and a continuance of previously transacted business. (See, also, *Socony-Vacuum Oil Co.* v. *Superior Court*, 35 Cal.App.2d 92 [94 P.2d 1019].)

Corporation Code, section 6504, *supra*, which states that service may be made whether or not the corporation has ever complied with the various steps set forth in chapter 3 of the Corporation Code, providing the corporation has transacted intrastate business in this state, does not mean that the business must be entirely intrastate. If that interpretation should be given the wording of the section, then it would be an easy matter to transact, through an agent, only interstate business, and thereby be immune from the provisions of the section in such an action as is pending in the trial court. If there is any substantial intrastate business, no matter how much interstate business may be transacted, the

section is applicable so far as that point is concerned. In *Eastman Kodak Co.* v. *Southern Photo M. Co.*, 273 U.S. 359, 372, 373 [47 S.Ct. 400, 71 L.Ed. 684], it is said: "Be that as it may, it is clear that such an enlargement was made by sec. 12 of the Clayton Act—dealing specifically with the venue and service of process in suits against corporations—under which the plaintiff proceeded in the present case. This provided that 'any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found *or transacts business;* and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found' . . . . We are further of opinion that a corporation is none the less engaged in transacting business in a district, within the meaning of this section—which deals with suits respecting unlawful restraints upon interstate trade—because of the fact that such business may be entirely interstate in character and be transacted by agents who do not reside within the district. And see *International Harvester* v. *Kentucky*, 234 U.S. 579, 587 [34 S.Ct. 944, 58 L.Ed. 1479]; *Davis* v. *Farmers Co-operative E. Co.*, 262 U.S. 312, 316 [43 S.Ct. 556, 67 L.Ed. 996]."

In *Giusti* v. *Pyrotechnic Industries, supra* (the Triumph case), it was held (p. 354) that the above is "the law in California as to the intrastate business of destroying appellant's business there." The Triumph case involved the commission of a conspiracy, a civil wrong independent of a contract. It is the civil wrong and not the conspiracy that is actionable. In brief, the subject of the action in the Triumph case and that in the present was in each instance based upon a tort. (5 Cal.Jur. § 29, pp. 528-529.)

A statute authorizing a means of service upon a foreign corporation which has transacted business in a state and then departed, if the action arises out of such business and the process is served prior to the expiration of the statute of limitations, is valid. The basis of such decision is that persons who have transacted business should not be precluded from enforcing a corporate liability by the withdrawal of the corporation from the state. (*Washington* v. *Superior Court*, 289 U.S. 361 [53 S.Ct. 624, 77 L.Ed. 1256, 89 A.L.R. 653].)

As applied to the peculiar facts in this case the Oro Navigation Company offers a minimum, if any, inconvenience.

As previously stated, one of the benefits of the laws and rules is the protection of the corporation to the extent that it may have an opportunity to defend actions. The Oro Navigation Company has had timely notice of the filing of the complaint as appears from the filing of the motion in the trial court and of this petition in this court. The purpose of filing this petition for a writ of prohibition is to restrain the trial court from entering a default judgment against the Oro Navigation Company. If a proper and timely appearance is made, no default judgment will be entered.

The petition for a permanent writ of prohibition is denied and the alternative writ discharged.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 22, 1947, and petitioner's application for a hearing by the Supreme Court was denied February 9, 1948. Schauer, J., and Spence, J., voted for a hearing.