[Civ. No. 16676. First Dist., Div. One. Feb. 27, 1957.]

ECLIPSE FUEL ENGINEERING COMPANY (a Corporation), Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; THOMAS H. BEATTY, Real Party in Interest.

[Civ. No. 16677. First Dist., Div. One. Feb. 27, 1957.]

ECLIPSE FUEL ENGINEERING COMPANY (a Corporation), Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; FRANCIS P. WAKEFIELD, Real Party in Interest.

[Civ. No. 16678. First Dist., Div. One. Feb. 27, 1957.]

ECLIPSE FUEL ENGINEERING COMPANY (a Corporation), Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; LARRY JOE REECE et al., Real Parties in Interest.

[Civ. No. 16679. First Dist., Div. One. Feb. 27, 1957.]

ECLIPSE FUEL ENGINEERING COMPANY (a Corporation), Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; DENNIS A. GREEN, Real Party in Interest.

[Civ. No. 16680. First Dist., Div. One. Feb. 27, 1957.]

ECLIPSE FUEL ENGINEERING COMPANY (a Corporation), Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; OLE R. YECNY, Real Party in Interest.

Lamb, Hoge & Killion and Lamb & Hoge for Petitioners.

No appearance for Respondent.

Boccardo, Blum & Lull, Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Real Parties in Interest.

WOOD (Fred B.), J.—In each of five suits brought by different individuals for personal injuries allegedly suffered as the result of a boiler explosion at an industrial plant in Santa Clara County, Eclipse Fuel Engineering Company, a corporation, was joined as one of the defendants, allegedly a distributor that sold the boiler to the owner of this industrial plant.

Eclipse, an Illinois corporation, specially appeared in each of the five cases and moved to quash service of summons upon it. In support of its appeal from the denial of those motions Eclipse claims the court acquired no jurisdiction over it because, it says, it never did business in California and, even if it did, process was not properly served.*

At the first hearing of this proceeding, it appeared that there was an inadequate record. The parties stipulated that a referee be appointed to take evidence and make findings on certain issues. Honorable Albert C. Wollenberg, Judge of the Superior Court in and for the City and County of San Francisco, appointed as such referee, conducted hearings and has made and filed his findings of fact.

## 1. WAS ECLIPSE "DOING BUSINESS" IN CALIFORNIA?

■ "Doing business" in this state is both a constitutional and a statutory requirement for the effective service of process upon a foreign corporation, such as Eclipse, which has not "qualified" to do business in this state. ■ In California the statutory requirement is the same as that of the due process clause of the federal Constitution; i.e., "doing business" within the meaning of section 411 of the Code of Civil Procedure is synonymous with the power of the state to subject foreign corporations to local process. (*Kneeland* v. *Ethicon Suture Laboratories*, 118 Cal.App.2d 211, 218-223 [257 P.2d 727].)

■ The test to be used when ascertaining whether a foreign corporation is doing business in this state, in the sense of rendering it amenable to the process of our courts, we find well expressed by Justice W. Turney Fox in *Jeter* v. *Austin Trailer Equipment Co.*, 122 Cal.App.2d 376, 382 [265 P.2d 130]: "In the landmark International Shoe case, the climate of judicial thinking on this problem, formerly encased in rigid legal formalisms, was profoundly revised. The approach taken was based on a realistic appraisal of the considerations

---

*Prohibition is a proper remedy if the trial court lacks personal jurisdiction. (*Jardine* v. *Superior Court* (1931), 213 Cal. 301, 303 [2 P.2d 756, 79 A.L.R. 291]; *Frey & Horgan Corp.* v. *Superior Court*, 5 Cal.2d 401, 402 [55 P.2d 203].)

involved. The Supreme Court of the United States, speaking through Justice Stone, substituted a qualitative criterion in place of the 'mechanical or quantitative' concepts formerly accepted as determinative. The court there stated that the 'test is not merely . . . whether the activity is a little more or a little less.' (*International Shoe Co.* v. *Washington, supra,* 319 [326 U.S. 310 (66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057)].) All that is required is that the foreign corporation have 'certain minimum contacts with it (the forum) such that the maintenance of the suit does not offend "traditional notions of fair play and justice." ' (P. 316.) The requirements of due process 'may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An "estimate of the inconveniences" which would result to the corporation from a trial away from its "home" or principal place of business is relevant in this connection.' (P. 317.)"

Our examination of the record convinces us that the contacts which Eclipse had with this state met those requirements and rendered it amenable to process.

It appears that Eclipse is an Illinois corporation, has its home office in that state, and maintains neither a place of business nor a bank account in California. But it also appears that Eclipse maintains contacts in California through Chester C. Smith. He is engaged in business under the fictitious firm name of "Thermal Engineering and Equipment Company." The firm's sales engineer is Sam A. Lombardo.

Whether those contacts amount to the doing of business in California by Eclipse calls, first, for an examination of the sales agreement between Eclipse and Smith.

This agreement was executed in April, 1949. It was still in effect and the parties were still operating under it when Lombardo's deposition was taken in January, 1955. (The plaintiffs' injuries allegedly occurred in October, 1953.)

The agreement describes Smith as "Chester C. Smith of the Thermal Engineering and Equipment Company, hereinafter referred to as the Representative," states that "the Representative is appointed exclusive Sales Representative for the Company [Eclipse] " in the indicated southern portion of this state. It provides for the sale of the products manufactured by the Boiler Division of Eclipse and destined for shipment to and use in that part of California which lies

south of the northern county lines of San Luis Obispo, Kings, Tulare and Inyo Counties. It provides a description of products and states that the "compensation to the Representative shall be only in the form of commissions on goods sold, except in cases where the Representative buys and sells for his own account" and specifies the rates of commissions and the terms upon which the same shall be paid by Eclipse. It also states that the representative "may buy and sell the products covered by this Agreement" and sets forth a "discount schedule which will apply" in such case. The sales prices are fixed by Eclipse.

The representative will give his best endeavors to the business of Eclipse at all times and will not manufacture, handle or sell any machinery, material or equipment "which in any way competes" with the products listed in the sales agreement. He may take on two or three noncompetitive lines, but no more, "subject to the advance approval and authorization, in writing" of Eclipse.

Each party will supply the other with copies of all correspondence pertaining to Eclipse business. Upon termination of the agreement, the representative will "give the company [Eclipse] all correspondence, records, literature, lists of customers and prospects and such other file records pertaining to the Company's business, as the Representative may have in his possession . . ."

Whether this agreement constitutes the representative an agent or an independent contractor is not pivotally important. As said in *Fielding* v. *Superior Court*, 111 Cal.App.2d 490, 494 [244 P.2d 968], the "essence of doing business is that the corporation is present within the state sufficiently to constitute it just and equitable that it be amenable to process within the state. (*Milbank* v. *Standard Motor Const. Co.*, 132 Cal.App. 67 [22 P.2d 271] ; *Boote's Hatcheries, etc. Co.* v. *Superior Court*, 91 Cal.App.2d 526, 528 [205 P.2d 31].) The technical distinction between an independent contractor and an agent is, for this purpose at least, immaterial, except as it may be evidence one way or the other (*Thew Shovel Co.* v. *Superior Court*, 35 Cal.App.2d 183 [95 P.2d 149] ; *Moore Machinery Co.* v. *Stewart-Warner Corp.*, 27 F.Supp. 526)." "Every factual situation where the question arises calls for a comparison of the business advantages derived from the methods employed by the corporation, with those it would enjoy if it conducted its business through its own offices or paid agents in the state. If the representation which peti-

tioner maintained in the state gave it in a practical sense, and to a substantial degree, the benefits and advantages it would have enjoyed by operating through its own office or paid sales force, it was clearly doing business in the state so as to be amenable to civil process." (*Sales Affiliates, Inc.* v. *Superior Court,* 96 Cal.App.2d 134, 136 [214 P.2d 541].)

The agreement in the instant case gives promise of such benefits and advantages to Eclipse, and other evidence indicates that those benefits and advantages have been and are enjoyed by Eclipse. This appears, principally, from the deposition of Sam A. Lombardo.

He testified (in January of 1955) that he has worked for Thermal Engineering and Equipment Company since August, 1952. He is sales engineer. His duty is to sell engineering products. They contact their customers personally. When calling on prospective purchasers they take with them brochures, a sort of catalog, furnished by Eclipse, descriptive of Eclipse products. Many times a customer knows what equipment he wants. At other times he knows only the end result to be accomplished and "we have to help provide him with the means to achieve the end result" and advise him as to the particular type of equipment for that particular job. Sometimes Thermal maintains the equipment for a customer. It also keeps on hand a stock of spare parts. The witness is also a demonstrator. Service men are employed to do work under supervision. Eclipse usually sends the equipment out unassembled, sometimes already assembled. Eclipse determines which way it is to be. When a customer is dissatisfied he usually calls on the sales person with whom he has been dealing. If a part proves defective "we go back to the supplier [by mail] and present the problem to them . . . and they take care of it," sending out new parts if they feel the claim is justified. There are other firms that handle boilers but Thermal is the only one that distributes Eclipse boilers in Los Angeles. The witness has met Eclipse representatives in California, including upon several occasions the president of Eclipse. In 1953 there was a display of Eclipse products at the Western Metal Show in Los Angeles. Some one was there telling people about the equipment. The witness did not know who paid the rental for that display booth. Upon other occasions he met several representatives of Eclipse here in California. Upon one such occasion in 1954 he met the president of Eclipse. They conversed "about future business in California, certain things he would be interested in

our operation." The witness also met the vice president of Eclipse in 1954. Their conversation was essentially the same as with the president. "He was interested in more sales, and we presented the problem of selling, how we sell," and discussed what "type of customers we were contacting and type of customers we should contact." The witness also had met Mr. Scharbau, the secretary-treasurer of Eclipse out here. Lombardo had met several other Eclipse people at Rockford, Illinois, when he visited the Eclipse plant there.

From the testimony of this witness sufficient facts were shown to support an implied finding by the trial court that there was continuity of business activity in this state adequate to meet the requirement of "doing business" here to render Eclipse amenable to the process of our courts. Also, the very fact that the Eclipse-Thermal contract was terminable by either party at any time by giving 30 days' notice, but still continued in operation (in January, 1955) is some indication that the activities conducted under it were of substantial benefit and advantage to Eclipse. (For a discussion of the required activities, their character and scope, see *Kneeland* v. *Ethicon Suture Laboratories, supra,* 118 Cal.App.2d 211, and *Jeter* v. *Austin Trailer Equipment Co., supra,* 122 Cal. App.2d 376, and authorities reviewed in each.)

It is true that in some of the cases emphasis is given to the volume of business developed by continuous activities in this state, in terms of thousands or millions of dollars a year, percentage of total business done, or by means of other units of measurement. That is well enough when the information is available to the adverse party. Such data emphatically demonstrates that "business" is being done and negatives any possibility that it consists of only a few, occasional, isolated transactions. But that type of proof is not always available to a plaintiff, and one would hardly expect a defendant to come forward and volunteer it. That proof of the actual volume of business resulting from a foreign corporation's activities in the former state is not indispensable is suggested by Judge Learned Hand's observation that "Possibly the maintenance of a regular agency for the solicitation of business will serve without more." (*Hutchinson* v. *Chase & Gilbert,* 45 F.2d 139, 141.) In *Frene* v. *Louisville Cement Co.,* 134 F.2d 511, 515 [77 App.D.C. 129, 146 A.L.R. 926], the court described the fundamental principle in terms of "the maintenance within the jurisdiction of a regular, continuous course of business activities, whether or not this includes the

final stage of contracting." Continuous activities, "be they as little as one will, satisfy the necessity of that physical 'presence' on which jurisdiction depends in a jurisprudence, territorially limited." (*French* v. *Gibbs Corp.*, 189 F.2d 787, 789.)

We do not, of course, wish to overemphasize the importance of "continuity" of business activities. There are situations in which a single transaction within a state may render a foreign corporation or a nonresident amenable to process. See, for example, *Kane* v. *New Jersey*, 242 U.S. 160 [37 S.Ct. 30, 61 L.Ed. 222]; *Hess* v. *Pawloski*, 274 U.S. 352 [47 S.Ct. 632, 71 L.Ed. 1091]; *Young* v. *Masci*, 289 U.S. 253 [53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170]. Each of these cases was mentioned and recognized in *International Shoe Co.* v. *Washington*, 326 U.S. 310, 318 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].

2. WAS ECLIPSE SERVED WITH PROCESS IN EACH OF THE FIVE ACTIONS?

In the case of a foreign corporation doing business in this state, summons is served in the manner provided in sections 6500-6504 of the Corporations Code (Code Civ. Proc., § 411, subd. 2).

Section 6500 states that "[d]elivery by hand of a copy of any process against a foreign corporation . . . to . . . the general manager in this State . . . [of the corporation] . . . shall constitute valid service on the corporation."*

The affidavit of service of summons and complaint in the action involved in our case Number 16676, showed service upon "Eclipse . . . by serving its exclusive manufacturer's agent, Thermal Engineering and Equipment Company, by delivering to and leaving with Sam A. Lombardi, agent for said corporation . . . 5469 San Fernando Rd. . . ." In Number 16678 it was the same except that delivery was to "C. C. Smith." The return in Numbers 16677, 16679 and 16680 read the same as in Number 16676 except that Lombardo was therein referred to as "manager and manufacturer's agent" instead of "agent of said corporation."

Such an affidavit of service of process is prima facie proof that the person named therein as managing agent for a

---

*Sections 6501-6504 provide for delivery to the Secretary of State and service by him by registered mail in certain contingencies, including inability to find a person to whom the delivery authorized by section 6500 may be made.

defendant corporation is such. (*Keener* v. *Eagle Lake Land & Irr. Co.,* 110 Cal. 627, 629-630 [43 P. 14]; *Golden Gate etc. M. Co.* v. *Superior Court,* 65 Cal. 187, 189 [3 P. 187]; *Rowe* v. *Table Mountain Water Co.,* 10 Cal. 441; *Roehl* v. *Texas Co.,* 107 Cal.App. 691, 705 [291 P. 262].) *Wilson* v. *Spring Hill Quartz-Mining Co.,* 10 Cal. 445, applied the same rule to a partnership or association, where the sheriff's return stated that he served the summons upon a certain company "by service upon . . . Pendleton, one of the partners and associates."

In the Roehl case the defendant contended that a sheriff's return of service was the weakest kind of proof and should not prevail over its counteraffidavit. The court ruled that "[as] to the affidavits here, so far as they present any conflict on the facts, the determination of the trial court is conclusive upon us [citing cases]" (p. 705 of 107 Cal.App.) and, after some discussion of the record the court said, "[o]n the whole we can not say there was such an absence of a showing that his character and rank measured up to the definition of a managing agent as to justify us in disturbing the conclusion of the trial court." (P. 707.)

In our case, the affidavits of service do not stand alone. We have additional elements of proof. Smith was doing business under the fictitious name and style of "Thermal Engineering and Equipment Company." Eclipse recognized that fact, for its sales agreement with him describes him as "Chester C. Smith of the Thermal Engineering and Equipment Company," "appoints" him its "exclusive sales Representative" in the area in this state assigned to him; and he has listed Eclipse in the Los Angeles telephone directory, with the same address and the same telephone number as listed for Thermal. Added to this is the fact that Sam A. Lombardo testified he works for "Thermal Engineering and Equipment Company" and is Sales Engineer for that company. These facts, instead of controverting the facts stated in the affidavits of service, tend to support them and to give the public and persons dealing with Thermal the appearance of the relationships expressed in the affidavits of service. Smith can not with good grace deny these relationships after having furnished the semblance of them by the exercise of the privilege granted him by this state to use the fictitious company name of "Thermal Engineering and Equipment Company." Nor does it lie in the mouth of Eclipse to disavow the acts and conduct of its "exclusive sales representative" in creating

the appearance of these relationships. (See *Milbank* v. *Standard Motor Const. Co.*, 132 Cal.App. 67, 71-72 [22 P.2d 271]; *Roehl* v. *Texas Co., supra*, 107 Cal.App. 691, 707.)

This seems a fitting case for application of the principles expressed by Justice Louis H. Ward in *Oro Nav. Co.* v. *Superior Court*, 82 Cal.App.2d 884, 889 [187 P.2d 444]: "The purpose of the various sections dealing with service of summons upon a foreign corporation is to give an aggrieved party a means of bringing a foreign corporation into a proper jurisdictional tribunal and to protect the corporation through the enactment of statutes providing methods and means of security from default judgments. If the corporation does not avail itself of statutory protective provisions and is aware of the filing of an action for damages and service of summons upon an alleged agent, who in turn gives timely notice of such service to the principal, it should not be permitted to take advantage of a technicality, the merit of which must be founded upon its inadvertent neglect or deliberate failure to comply with the law or upon some changed condition in transferring the main office without notification to the employees."

Perhaps a word should be said about a change in the wording of the applicable statute which was made in 1931 by the amendment of section 411 of the Code of Civil Procedure and the addition of section 406a to the Civil Code (Stats. 1931, pp. 1836 and 1833, respectively). ▮ That resulted in a change from the designation "a managing or business agent . . . in this state" (Code Civ. Proc., § 411 as it formerly read) to "the general manager in this state" (Civ. Code, § 406a; now Corp. Code, § 6500). Thermal is exclusive sales representative of Eclipse in the southerly counties indicated in the Eclipse Sales Agreement. There is some evidence tending to show that Eclipse may have exclusive sales representatives ("general managers") in a number of other areas in the state. Does the expression "the general manager in this State" mean only one general manager functioning throughout the state? No. That has been settled by a line of decisions commencing before 1931 and continuing on down after the year of that amendment.

In *Roehl* v. *Texas Co., supra*, 107 Cal.App. 691, 704 the court formulated the principle and declared the test in these words: "We hold the true rule to be that originally laid down in New York in *Palmer* v. *Pennsylvania Co., supra*, [35 Hun. (N.Y.) 369], and reiterated in nearly the same lan-

guage in *Barret* v. *American Tel. & Tel. Co., supra,* [(56 Hun. 430) 10 N.Y.S. 138], and again in *Brayton* v. *New York, L. E. & W. R. Co., supra* [72 Hun. 602 (25 N.Y.S. 264)], that 'every object of the service is obtained when the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made' and that by service on such an agent, as said in the two last-mentioned cases, 'the requirement of the statute is answered.' Whether in any given case the agent in question, is a 'managing agent' within what we have decided the meaning of that expression to be, must depend on the particular facts involved. It is impracticable to lay down a more concrete test of general validity.''

That test has continued to be used and applied, notably in these cases: *Milbank* v. *Standard Motor Const. Co., supra,* 132 Cal.App. 67, 70-71; *Socony-Vacuum Oil Co.* v. *Superior Court* (1939), 35 Cal.App.2d 92, 94 [94 P.2d 1019]; *Thew Shovel Co.* v. *Superior Court* (1939), 35 Cal.App.2d 183, 192 [95 P.2d 149]; *Mills Music, Inc.* v. *Lampton,* 40 Cal.App.2d 354, 360 [104 P.2d 893].

In this case, Thermal, quite clearly, was ''general manager'' in the area described in the Eclipse-Thermal agreement, significantly different from what the situation well might be if there were a general manager over all of the territory of the state with Thermal functioning under him, as a branch manager in the area assigned to it.

Counsel for Eclipse relies heavily upon *Gravely Motor Plow & Cultivator Co.* v. *H. V. Carter Co.* (9th Circ.), 193 F.2d 158, but that case has a number of distinguishing characteristics, not the least of which is the fact that there the defendant foreign corporation was not ''doing business'' in California. Significant, too, was the fact that service was made by delivery of process to an officer of a California subsidiary, with no showing that the subsidiary was an agent or representative of the defendant. Indeed, the court distinguished *Clover Leaf Freight Lines* v. *Pacific Coast Wholesalers Assn.,* 166 F.2d 626, as one in which a corporation was ''the agent of the out-of-state association in doing the latter's business in Illinois and was served with the summons to the association, in compliance with the Illinois law for the serving of corporations.'' (P. 161 of 193 F.2d.)

Under these circumstances we see no basis for disturbing the implied findings of the trial court on this issue. Concerning any conflict there may be in the evidence, the determination of the trial court binds us.

The alternative writ is discharged and the application for a peremptory writ is denied in each of the five cases here involved.

Peters, P. J., and Bray, J., concurred.