[Civ. No. 27025. Second Dist., Div. Four. Apr. 18, 1963.]

JAMES R. TWISS, LTD., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; VICTOR BOBIKEVICH, Real Party in Interest.

Lillick, Geary, McHose, Roethke & Myers, William H. Brainerd and David Brice Toy for Petitioner.

No appearance for Respondent.

Margolis & McTernan and Elaine B. Fischel for Real Party in Interest.

BURKE, P. J.—An English corporation, James R. Twiss, Ltd., petitions this court for a writ of mandate to compel the superior court to quash service of summons and complaint for lack of jurisdiction on the ground that petitioner "is not and was never doing business" within the State of California.

Plaintiff, a longshoreman, charging petitioner with negligence in failure to provide a safe place of employment and unseaworthiness of vessel, filed an action against petitioner seeking damages for personal injuries allegedly sustained by him on April 19, 1960, while unloading cargo from a ship in the harbor at Wilmington, California. Process was served

(purportedly pursuant to Code Civ. Proc., § 411, subd. 2, and Corp. Code, § 6501) on the Secretary of State of California, who forwarded the summons and complaint to petitioner in London by mail. Petitioner appeared specially and moved to quash such service. The motion was denied.

The facts presented by the petition and affidavits made a part thereof in the court below on the jurisdictional issue are not in dispute. On April 11, 1960, the SS Dove, a vessel operated by petitioner as managerial agent for its owner, Columbine Steamship Company, a Liberian corporation maintaining offices in Geneva, Switzerland, was carrying cargo for Seaboard Shipping Company of Vancouver, Canada, under a charter made in New York, where petitioner acted as owner's agent. On that date the ship docked at Wilmington, California, for bunkering (filling tanks with coal or oil). During bunkering a leak was observed in the ship's Number 2 hold and it became flooded. Under instructions from a Lloyd's registry surveyor and solely because of the distress, 22,637 pieces of lumber aggregating 479 tons were unloaded and consigned overland to an east coast destination. During the unloading plaintiff was allegedly injured.

General Steamship Corporation of Wilmington acted as agent for petitioner during the stopover, having been appointed by petitioner by letter from London dated March 28, 1960. General notified Ocean Terminals of Wilmington which, in turn, requested Crescent Wharf and Warehouse Company of Wilmington to supply longshoremen. Crescent placed an order for longshoremen with International Longshoremen and Warehousemen Union dispatch hall at San Pedro. General also purchased ship's supplies, negotiated and paid for tug hire, mooring and unmooring, terminal services relating to discharge and reloading of cargo, stevedoring services, wharf rental, electricity, watchmen, lumber blocks for temporary storage, customs house services, wharf storage, the handling, tallying and loading of lumber cargo for overland shipment, nails, translations from log book, garbage and trash removal, attendance of surveyors, agency fees and expenses, pilotage, quarantine inspection, immigration inspection, animal and meat inspection, fresh water, engineering supplies, flashlights, fresh provisions, wine, doctors' services, medicine, cab hire, laundering, labor, material, equipment, survey and attendance to clean up oil spill, oil spill fine, fuel oil, customs fee, dockage fee, wharfage fee and freight charges. The ship was in dock from April 11 to April 24, a period of two

weeks. In reply to an interrogatory requesting photocopies of any evidence of payment of charges, petitioner replied, "The various vouchers are too voluminous to attach to the record but will be made available for the inspection of plaintiff's attorney at the offices of attorneys for defendant upon request."

The vessel had no consignments of cargo destined for any port in California. No cargo was taken on. No crew members were signed on or off. The ship has not entered a California port prior to or since the call of April 11, 1960. Except for the single call there is no allegation of any activities, either directly or indirectly, in the state on the part of petitioner or the owner of the vessel. No officer, director, or person beneficially interested in either corporation is a United States citizen or resident.

The basic question presented on this appeal is: Do the activities engaged in by petitioner in this state justify assumption of jurisdiction over petitioner by California courts either under existing statutes or under authority of judicial decision?

 The only limitations upon the jurisdiction of the courts of an American state are to be found in the Constitution of the state, the Constitution of the United States and the same extensive powers possessed by the other states of the United States. (U.S. Const., Amend. X; *Tennessee Coal Iron & R.R. Co.* v. *George* (1914) 233 U.S. 354 [34 S.Ct. 587, 58 L.Ed. 997, L.R.A. 1916D 685]; *Texas* v. *White* (1868) 74 U.S. (7 Wall.) 700 [19 L.Ed. 227].)

Several successive bases for jurisdiction by state courts over foreign corporations have been developed by the United States Supreme Court over the years. "Originally, the theory was that the foreign corporation could be sued only in the state which created it [*Bank of Augusta* v. *Earle* (1839) 38 U.S. (13 Pet.) 519 (10 L.Ed. 274)]. Later, jurisdiction could be based upon implied consent. For example, a statute could provide that a company, by putting an agent in the state, consented to service of process upon him [*Lafayette Ins. Co.* v. *French* (1855) 59 U.S. (18 How.) 404 (15 L.Ed. 451)]. Then the 'presence' test came into being [*Philadelphia & Reading Ry. Co.* v. *McKibbin* (1916) 243 U.S. 264 (37 S.Ct. 280, 61 L.Ed. 710)]. Under this test a personal judgment cannot be rendered against a foreign corporation, in the absence of consent, unless 'it is doing business within the state in such manner and to such [an] extent as to warrant

the inference that it is present there' [*Philadelphia & Reading Ry. Co.* v. *McKibbin* (1916) 243 U.S. 264, 265 (37 S.Ct. 280, 61 L.Ed. 710, 712)]. This test has been applied by the California Courts [*Oro Navigation Co.* v. *Superior Court* (1947) 82 Cal.App.2d 884 (187 P.2d 444)]. Recently, however, in the *International Shoe* case [*International Shoe Co.* v. *State of Washington* (1945) 326 U.S. 310 (66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057)], the Supreme Court apparently formulated a new basis for jurisdiction with its statement that the demands of due process are met 'by such contacts of the corporation with the state of the Forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there' [*International Shoe Co.* v. *State of Washington* (1945) 326 U.S. 310, 317 (66 S.Ct. 154, 90 L.Ed. 95, 102, 161 A.L.R. 1057, 1062)]." (West's Code Civ. Proc. Ann., § 411, subd. 2, Note p. 373.)

The holding in the *International Shoe* case, *supra,* has been designated as the "fair play and substantial justice" theory. In the decision, reference is made to cases where single acts have occurred, namely, the nonresident motorist decisions, where jurisdiction is based upon a single tortious act done by a nonresident within the forum. The conclusion is drawn that dividing lines are not on a purely quantitative or mechanical basis; that the nature and quality of the act done furnishes the test to be applied to solve the jurisdictional problem. Reference is made to the fact that a corporation doing acts in a foreign state enjoys the benefit of the protection of the laws of that state; that an obligation may arise out of such acts and to require the corporation to respond to actions arising therefrom can "hardly be said to be undue." (*International Shoe Co.* v. *State of Washington, supra,* 326 U.S. 317 [ 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].)

Applying the rule of the *International Shoe* case *supra,* to the facts in this case before us, we find that direct contact was made with the State of California by entry of petitioner's vessel into the California port at Wilmington. Petitioner for the period of its stay enjoyed the facilities there provided and the protection of the state. Innumerable purchases were made to facilitate the unloading of lumber over a two-week period which, admittedly, were of an emergency nature and not a usual part of petitioner's business. California workmen were needed for the purpose; the ship crew

was inadequate. During the process of unloading and allegedly because of the ship's negligence, a California resident was injured. If he is denied access to our courts by the granting of the petition before us, it will be necessary for plaintiff to prosecute his claim in a foreign country. Under such circumstances considerations of convenience and necessity, of relative hardship to litigants, of availability of witnesses and production of proof should weigh in determining the proper forum. It is obvious that a longshoreman residing in California could not prosecute his damage claims in the courts of a foreign land as conveniently as could petitioner defend such action in this forum.

Clearly, if petitioner's transactions in this state constitute "doing business" under the "presence" test, then plaintiff has filed his action in the proper forum and the petition to quash service of summons and complaint should be denied. Under our view of the case, however, it is not necessary for us to determine the answer to this question if, under the rule of the *International Shoe* case, petitioner's contacts with the state were sufficient as to make it reasonable to require the corporation to defend this action.

■ "Doing business" in the state under the "presence" test is not an exclusive basis upon which to predicate jurisdiction in California courts over foreign corporations. As noted, the *International Shoe* case made reference to tortious acts, unrelated to "doing business" being as remediable as matters of contract. In California this has been codified by the enactment of Vehicle Code section 17451 et seq., which provide for service of process on nonresidents in actions arising out of the operation of vehicles on California highways. The term "nonresidents," used in the Vehicle Code, embraces persons and corporations. Thus, single torts, or accidents, unrelated to "doing business" are contemplated by such provisions.

The recent case of *Jackson* v. *Continental Telephone Co.*, 212 Cal.App.2d 510, 515 [28 Cal.Rptr. 1], involved a merger of a foreign corporation with a California corporation. A fraud action was brought in California by stockholders, joining both corporations as defendants. The foreign corporation sought to quash service of process on the ground that the court "lacked jurisdiction over the Continental Telephone Company, which does no business in California." The lower court granted the motion but such order was reversed on appeal. In addition to finding that the foreign

corporation had consented to jurisdiction by the terms of its merger agreement, and by force of similar provisions in our Corporations Code, the court stated: " 'The interest of the state in providing a forum for its residents [citation] or in regulating the business involved [citation]; the relative availability of evidence and the burden of defense and prosecution in one place rather than another [citations]; the ease of access to an alternative forum [citation]; the avoidance of multiplicity of suits and conflicting adjudications [citations]; and the extent to which the cause of action arose out of defendant's local activities [citations] are all relevant to this inquiry.' " The court held that the foreign corporation was "doing business" in this state within the meaning of section 411, subdivision 2, of the Code of Civil Procedure.

In *McGee* v. *International Life Ins. Co.*, 355 U.S. 220 [78 S.Ct. 199, 201, 2 L.Ed.2d 223], the exercise of jurisdiction was sustained where the foreign correspondent had but one contractual dealing in California—the issuance of a single policy of insurance. Such contact with the state was sufficient to satisfy the due process requirements and statutory authority. Clearly, such contact was not composed of "repeated and successive transactions," heretofore frequently used as a measuring stick in applying the "presence" test. Service of process in the latter case was under the special provisions of the Insurance Code (§§ 1600, 1604, 1605). Other alternative methods of service of process on foreign corporations appear in the Bank Act (§ 7 (1909)), the Corporate Securities Act (§§ 3, 6, 9 (1917)), and the Public Utilities Code (§ 21414) regarding use of airports by aircraft. However, it is our view that, without such specific statutory provisions, service of process in such situations could be made under section 411, subdivision 2, of the Code of Civil Procedure, and sections 6500-6504 of the Corporations Code.

*Fisher Governor Co.* v. *Superior Court*, 53 Cal.2d 222, 224 [1 Cal.Rptr. 1, 347 P.2d 1], points out: "Code of Civil Procedure, section 411, subdivision 2, authorizes service of process on foreign corporations that are 'doing business in this State.' 'That term is a descriptive one that the courts have equated with such minimum contacts with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95, 102, 161 A.L.R. 1057]). Whatever limitation it imposes is equivalent to that of the due process clause.

" '[D]oing business' within the meaning of section 411 of the Code of Civil Procedure is synonymous with the power of the state to subject foreign corporations to local process." (*Eclipse Fuel etc. Co.* v. *Superior Court,* 148 Cal.App.2d 736, 738 [307 P.2d 739]. . . .)' (*Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855, 858-859 [323 P.2d 437] ; . . .)"

Accordingly, without the limiting meaning that "doing business" must entail repeated and successive transactions, ordinarily associated with commercial enterprise, the expression "doing business in this state" may properly be interpreted to comport with the permissible limits of due process. We construe the term to mean any act or acts creating such contact with the state as to make it reasonable to require the foreign corporation to defend the particular suit which is brought, providing the maintenance of the suit does not offend traditional notions of fair play and substantial justice. (*International Shoe Co.* v. *Washington, supra,* 326 U.S. 317 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].)

The acts of petitioner met this test. The alternative writ is discharged and the petition for writ of mandate is therefore denied.

Jefferson, J., and Bishop, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.