[Civ. No. 27032. Second Dist., Div. Four. Jan. 6, 1964.]

OVERLAND MACHINED PRODUCTS, INC., Plaintiff and Appellant, v. SWINGLINE, INC., et al., Defendants and Respondents.

George C. Black and Patrick Kerrigan for Plaintiff and Appellant.

Ely, Kadison & Quinn, Stuart L. Kadison and Daniel S. Mark for Defendants and Respondents.

BURKE, P. J.—Two New York corporations executed a written contract with a California corporation, and later a purchase order based on the written contract, for the manufacture of certain stapling devices. A third corporation, a California corporation, having all of its stock owned by the minority stockholders of one of the New York firms, actually merchandized the products in California.

The New York corporations were purportedly served with process in the instant action by service on the president of the California corporation as "general manager" in this state for the New York firms. The latter firms moved to quash such attempted service of summons and complaint and the motion was granted. Plaintiff appeals.

The test for amenability of foreign corporations to service of process of state courts is no longer a question of whether there were a sufficient number of acts within the state to have constituted "doing business" in the old commercial sense, but is rather a qualitative problem. *International Shoe Co.* v. *Washington,* 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057], established the "fair play and substantial justice" theory which has been incorporated in California decisions. The present test of amenability to service is whether the foreign corporation has committed "any act or acts creating such contact with the state as to make it reasonable to require the foreign corporation to defend the particular suit which is brought, providing the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (*James R. Twiss, Ltd.* v. *Superior Court,* 215 Cal.App.2d 247, 254 [30 Cal.Rptr. 98] and *Sims* v. *National Engineering Co.,* 221 Cal.App.2d 511 [34 Cal.Rptr. 537].)

Defendants assert they have maintained an arm's length relationship to their California affiliate and its presi-

dent. However, close scrutiny of the activity engaged in justifies jurisdiction here.

The New York firms contend they are not "doing business" in this state; that isolated sales to their California affiliate do not constitute "doing business." But they interpret "doing business" to mean commercial activity as it was weighed and construed prior to the more recent cases to which we have previously referred. Such activity is no longer the exclusive test for amenability to service. As indicated, "contact" of such nature as to make it reasonable to require submission to jurisdiction, under the facts of the case, is the present test.

In this case the authorized officer of one of the New York firms came to California and personally inspected the facilities of plaintiff to determine its capacity to perform an intended contract for the manufacture of stapling devices. A written contract was negotiated by such officer; a purchase order was issued implementing such contract; the work was performed in California; the contract provided for interpretation pursuant to the laws of California; the intended outlet for the product was the California "subsidiary" corporation; payment for such work was denied plaintiff; and suit has been instituted here for collection. Such circumstances present more than the minimum contact requisite for the assumption of jurisdiction.

While the president of the California corporation, in constant contact with the New York firms, was not an officer, agent or employee of those firms, his position, in the scheme of things, was such as to most likely insure notice to the New York firms of any notice or process served upon him affecting their interests. And such did occur. Now, because of the purported separation in corporate structures and their officialdom, the foreign corporations seek immunity from this state's jurisdiction for technical reasons that present the very cause for the requirement that an agent be appointed for the acceptance of service as a condition for doing business in this state.

The expanded connotation accorded the term "general manager," used in section 6500 of the Corporations Code, is considered in *Cosper* v. *Smith & Wesson Arms Co.*, 53 Cal.2d 77, 83-84 [346 P.2d 409], wherein the court stated: "The second consideration in testing the validity of service under section 6500 of the Corporations Code is whether the person served is within the statutory designation—here 'the general

manager in this State' for Smith and Wesson. In this regard, it has been said that 'every object of the service is obtained when the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made,' and by service on such an agent, 'the requirement of the statute is answered.' (*Eclipse Fuel Eng. Co.* v. *Superior Court, supra,* 148 Cal.App.2d 736, 746 [307 P.2d 739].) . . . Here, it reasonably appears that Lookabaugh as a manufacturer's representative . . . would have ample regular contact with Smith and Wesson and would be of 'sufficient character and rank to make it reasonably certain' that Smith and Wesson would be apprised of the service of process. . . . In short, the arrangement of Smith and Wesson with Lookabaugh appears, in the light of the president's affidavit, to have given Smith and Wesson substantially the business advantages that it would have enjoyed 'if it conducted its business through its own offices or paid agents in the state' (*Eclipse Fuel Eng. Co.* v. *Superior Court, supra,* 148 Cal. App.2d 736, 740); and such arrangement was sufficient to constitute Lookabaugh 'the general manager in this State' for purposes of service of process on Smith and Wesson. (Corp. Code, § 6500.) ''

From the above cases and the other authorities cited therein it is apparent that distinctions based on details of contract, agency or formal employment are subordinate to the main purpose to be served by the relationship, namely, amenability to service. ''Every object of the service is obtained when the agent served is of sufficient *character and rank* to make it reasonably certain that the defendant will be apprised of the service made.'' (Italics added.) (*Eclipse Fuel Eng. Co.* v. *Superior Court, supra,* 148 Cal.App.2d 736.) ''Ample regular contact'' is stated, in *Eclipse,* as the reason for the rule. Such regular contact existed in the instant case. The California firm regularly reported its activities to New York, including correspondence at least once a week and a monthly report regarding sales volume in this state reflecting its operations, profit and loss, sales and accounts receivable. While the business of the California corporation is not that of the New York firms, from the foregoing general statement, it can be seen that sufficient contact by the New York firms has been made with the state that fair play and substantial justice require defendants to respond to the action brought in this forum.

The order quashing service of summons and complaint is reversed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied January 27, 1964, and respondents' petition for a hearing by the Supreme Court was denied March 4, 1964.